Henry Clayborne JOHNSON *v.* STATE of Arkansas

CR 80-145                                     606 S.W. 2d 752

Supreme Court of Arkansas

Opinion delivered November 3, 1980

*E. Alvin Schay*, State Appellate Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *James F. Dowden*, Asst. Atty. Gen., for appellee.

RICHARD L. MAYS, Justice. Appellant was charged and convicted of second degree murder under Ark. Stat. Ann. § 41-1503(1)(b) (Repl. 1977), in that he "knowingly" caused the death of another person under circumstances manifesting extreme indifference to the value of human life. He brings this appeal contending that there was no substantial evidence to support a jury's finding that he "knowingly" caused a death. We agree and, accordingly, reverse.

The evidence presented at the trial established that appellant and his girlfriend, Ms. Helen Pace, were sitting in Ms. Pace's Volkswagen in the late evening of August 30, 1979. The car was parked near the intersection of Wright and Battery Avenues in Little Rock, Arkansas, and was facing north across Wright Avenue which runs east and west. There were 15 to 50 people milling about the street in the general vicinity of two night clubs which were located on the north side of Wright Avenue and to the east of Ms. Pace's parked car.

Ms. Pate, who was seated on the passenger side of the car, observed Carl Glass, a former boyfriend with whom she had had an altercation earlier that evening, approaching her car from the rear and got out to meet him. After exchanging a few words, the two began fighting. During the struggle, the appellant grabbed a pistol from the car seat, got out, and fired a shot in the direction of Glass. When appellant fired a second shot, Glass quickly moved around to the front of the Volkswagon, keeping his head down. He was now generally

between the appellant and the two night clubs across the street where the crowd of people had gathered. As Glass raised up and started running, appellant fired a third time, and then fired two more shots in his direction as he ran west on Wright Avenue.

Just before the shooting, the victim, Tommy Stacker, was standing in front of the 21 Nighthawks Club, one of the clubs across the street, located on the northwest corner of Wright Avenue and Wolfe. As he began to cross Wright Avenue going away from the crowd in response to someone's beckoning, he was struck in the chest by a bullet. Stacker stumbled back into the 21 Nighthawks Club and collapsed. He was then carried outside and laid on the sidewalk where he died.

In reviewing a criminal conviction on appeal in which the appellant challenges the sufficiency of the evidence, we view the evidence in the light most favorable to the state and affirm only if there is substantial evidence to support the conviction. *Harris* v. *State*, 262 Ark. 680, 561 S.W. 2d 69 (1978). Evidence is substantial if it has sufficient force and character to compel a conclusion with reasonable and material certainty and precision. *Jones* v. *State*, 269 Ark. 119, 598 S.W. 2d 748 (1980). It must be such that it induces the mind to pass beyond mere suspicion or conjecture. *Jones* v. *State, supra.*

Appellant contends that there is no substantial evidence that he "knowingly" caused the death of Tommy Stacker. A person acts "knowingly" when he is aware of the nature of his conduct, the attendant circumstances and that his conduct is practically certain to cause the result. Ark. Stat. Ann. § 41-1503(1)(b) (Repl. 1977); *Harris* v. *State, supra.* Although we find sufficient evidence to infer that the appellant was aware of the nature of his conduct and the attendant circumstances, we do not find substantial evidence to justify concluding that appellant was aware that his conduct was *practically certain* to cause the death of a bystander or a death other than that of Glass. There is no evidence that appellant shot into the crowd. In fact, the evidence indicates that the victim was not a part of the crowd when he was shot. Although Glass testified that appellant *would* have shot across the street

*somewhere if* the appellant's third shot had been aimed at him, we do not find that testimony sufficient to establish that appellant shot into the crowd. Since we conclude that shooting into the crowd is the only way that appellant could have been *practically certain* that a death would result, we find insufficient evidence to establish that he "knowingly" caused the death of Tommy Stacker.

We are not unmindful that had appellant been charged under a statutory provision in which his intent to kill or seriously harm anyone had been in issue, no challenge to the sufficiency of the evidence could have been sustained. There is substantial evidence that appellant intended to kill or cause serious injury to Glass. But, as we construe the term, *practically certain*, in relation to the death which did occur, we find that the facts fall short of meeting its requirements.

Reversed.

FOGLEMAN, C.J., HICKMAN and STROUD, JJ., dissent.

JOHN F. STROUD, Justice, dissenting. Appellant was charged by information and convicted by a jury of second degree murder in that he did "knowingly cause the death of Tommy Stacker under circumstances manifesting extreme indifference to the value of human life." Ark. Stat. Ann. § 41-203 (2) defines "knowingly" as it is used in this context:

A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

The majority of this court has incredibly reversed the conviction by finding that "shooting into the crowd is the only way that appellant could have been *practically certain* that a death would result." The shooting occurred at night in an area of several night clubs, and Ms. Helen Pace, the appellant's girlfriend, estimated that between 40 and 50 persons were on the streets there at the time of the shooting. It was undisputed that the appellant fired five shots from a .38 pistol at Carl Glass as he ran down Wright Avenue in Little Rock. Apparently Tommy Stacker was not standing in a

crowd, but was standing outside one of the clubs talking to Gussie Dean Henderson. She testified that they were about to enter the club when someone called to him, and he was shot as he stepped off the curb to cross the street. I think the shooting by appellant was clearly under circumstances manifesting extreme indifference to the value of human life and that it was *practically certain* that wildly firing five shots in that crowded area would either kill Carl Glass or someone else. I would affirm the conviction.

FOGLEMAN, C.J., and HICKMAN, J., join in this dissent.