Cartrell Lewan McCOY *v.* STATE of Arkansas

CR 01-762                                                    69 S.W.3d 430

Supreme Court of Arkansas
Opinion delivered March 14, 2002
[Supplemental opinion on denial of rehearing
delivered April 18, 2002.*]

---

* *Reporter's note*: See 348 Ark. 239, 74 S.W.3d 599 (2002).

*William R. Simpson, Jr.*, Public Defender; *Brett Qualls* and *Steve Abed*, Deputy Public Defenders, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. ■ Appellant Cartrell Lewan McCoy was convicted of attempted first-degree murder and burglary in the Pulaski County Circuit Court. He was sentenced to thirty years' and five years' imprisonment, respectively, and ordered to pay a fine of $5,000. Additionally, the trial court revoked his probation for a prior conviction of possession of cocaine with intent to deliver and sentenced him to a concurrent term of fifteen years' imprisonment. Appellant appealed to the Arkansas Court of Appeals, arguing that the trial court erred in denying his motion to instruct the jury on the crime of attempted second-degree murder.[1] The court of appeals agreed with Appellant and reversed. *See McCoy v. State*, 74 Ark. App. 414, 49 S.W.3d 154 (2001). The State filed a petition for review of that decision, and we granted it, pursuant to Ark. Sup. Ct. R. 1-2(e). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *See Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407 (2001); *Miller v. State*, 342 Ark. 213, 27 S.W.3d 427 (2000). We reverse the trial court and affirm the court of appeals.

The facts of this case are not in dispute. On August 11, 1999, Appellant entered the apartment of Rodney Wilson and began firing a gun toward his ex-girlfriend, Sarah Battung. Battung was

---

[1] Appellant's attorney filed a no-merit brief on the revocation. The court of appeals initially declined to reach the issue because counsel had not provided the entire record for review. On rehearing, however, the court of appeals reversed itself and affirmed the trial court's ruling revoking Appellant's probation. *See McCoy v. State*, 74 Ark. App. 423-A, 52 S.W.3d 510 (2001) (*supplemental opinion on grant of reh'g*). Neither party seeks review of that part of the decision; hence, we do not review it.

hit by two bullets, one in her chest and one in her back. As a result of the incident, Appellant was charged with attempted first-degree murder under Ark. Code Ann. §§ 5-3-201 and 5-10-102(a)(2) (Repl. 1997). In addition, Appellant was charged with residential burglary, in violation of Ark. Code Ann. § 5-39-201(a)(1) (Repl. 1997), for having entered or remained unlawfully on Wilson's premises.

At the conclusion of all the evidence, Appellant requested an instruction on attempted second-degree murder, under Ark. Code Ann. § 5-10-103(a)(1) (Repl. 1997). The State objected on the ground that the attempt statute, section 5-3-201, requires that a person act purposely, while second-degree murder under section 5-10-103(a)(1) requires that a person act knowingly. The State contended that it was not possible to purposely attempt a knowing offense. The trial court agreed and refused to instruct on second-degree murder. The jury convicted Appellant of attempted first-degree murder and burglary.

Appellant challenged the attempted-murder conviction in the court of appeals. He argued that the trial court had erred in refusing to instruct on attempted second-degree murder, because it is a lesser-included offense of attempted first-degree murder. In response, the State abandoned its trial argument and submitted three alternative reasons to affirm the trial court's ruling. First, the State argued that attempted second-degree knowing murder is not a lesser-included offense of attempted first-degree purposeful murder, because second-degree murder requires the additional proof that the crime was committed "under circumstances manifesting extreme indifference to the value of human life." *See* section 5-10-103(a)(1). Second, the State argued that the trial court's refusal to give the instruction is correct because the instruction proffered by Appellant, a standard AMCI 2d instruction, did not accurately state the law. Third, the State argued that there was no rational basis for instructing the jury on attempted second-degree murder. The court of appeals was not persuaded by any of these arguments, and it reversed Appellant's conviction and remanded for new trial. The State petitioned for review of this decision, and we granted it for the purpose of clarifying the law on this issue.

Before we reach the merits of this issue, we must address a preliminary issue concerning the appropriate test for determining when an offense is included in another offense. In *Goodwin v. State*, 342 Ark. 161, 27 S.W.3d 397 (2000), this court observed in a footnote that there were possible inconsistencies between our case

law and Ark. Code Ann. § 5-1-110 (Repl. 1997), regarding the requirements for a lesser-included offense. *See also Hill v. State*, 344 Ark. 216, 40 S.W.3d 751 (2001). Our case law has generally required that three criteria be met before an offense will be considered a lesser-included offense. Section 5-1-110(b), on the other hand, provides three alternative ways in which an offense may be included in another offense. This inconsistency was not directly addressed in *Goodwin* because both parties had relied solely on this court's case law and had not otherwise briefed the issue. This court made it clear, however, that it would be inclined to address this issue in the future, once it was properly before us.

In the present case, the State relies on this court's case law, while Appellant relies on one of the alternative tests set out in section 5-1-110(b). Particularly, he relies on subsection (b)(3), which provides, in part, that an offense is a lesser-included offense if it differs from the offense charged only in the respect that a lesser kind of culpable mental state suffices to establish its commission. Thus, because Appellant relies on section 5-1-110, we will address the inconsistencies between our cases and that statute.

Section 5-1-110 was originally enacted in Act 280 of 1975 and became effective January 1, 1976. Prior to the passage of Act 280, the requirements for determining when an offense was included in another offense were established at common law, beginning with *McBride v. State*, 7 Ark. 374 (1847). There, this court held: "A party indicted of one offence may be convicted of a lesser, provided it be of the same class with that which he is charged." *Id*. at 375. This holding was expanded on in *Cameron v. State*, 13 Ark. 712, 714 (1852), wherein this court held:

> [U]pon an indictment for a felony, the accused may be convicted of a misdemeanor, where both offences belong to the same generic class, where the commission of the higher may involve the commission of the lower offence, and where the indictment for the higher offence contains all the substantive allegations necessary to let in proof of the misdemeanor.

This court adhered to this three-part test for over one hundred years. *See, e.g., Sharpensteen v. State*, 220 Ark. 839, 250 S.W.2d 334 (1952); *Bailey v. State*, 215 Ark. 53, 219 S.W.2d 424 (1949); *Moreland v. State*, 125 Ark. 24, 188 S.W. 1 (1916); *Monk v. State*, 105 Ark. 12, 150 S.W. 133 (1912); *State v. Nichols*, 38 Ark. 550 (1882); *Guest v. State*, 19 Ark. 405 (1858); *Strawn v. State*, 14 Ark. 549 (1854).

In *Gaskin v. State*, 244 Ark. 541, 426 S.W.2d 407 (1968), this court altered its prior decisions and opted for a more succinct test: "To be an included offense, all the elements of the lesser offense must be contained in the greater offense — the greater containing certain elements not contained in the lesser." *Id.* at 543, 426 S.W.2d at 409 (quoting *Beck v. State*, 238 Ind. 210, 213, 149 N.E.2d 695, 697 (1958)). However, in *Caton v. State*, 252 Ark. 420, 479 S.W.2d 537 (1972), this court retreated from the one-dimensional test adopted in *Gaskin* and reaffirmed the prior three-prong test established in *Cameron*. This remained the test for lesser-included offenses until the General Assembly passed Act 280 of 1975.

Act 280 created our current comprehensive Criminal Code. The Act's purpose is reflected in its title: "AN ACT to Reform, Revise, and Codify the Substantive Criminal Law of the State of Arkansas[.]" Section 105 of the Act was originally codified as Ark. Stat. Ann. § 41-105 and is now found at section 5-1-110. That section provides in pertinent part:

> (b) A defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:
>
> > (1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged; or
> >
> > (2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included within it; or
> >
> > (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish its commission.

This statute is clearly written in the disjunctive, connected with the term "or," and provides three distinct ways in which an offense may qualify as a lesser-included offense. As if the statute itself was not clear enough, the Official Commentary to this provision plainly reflects the legislature's intent in establishing multiple ways to determine whether an offense is included in another:

> By defining an included offense, subsection (b) serves two functions. Its primary purpose is to authorize conviction of

offenses not expressly named in the indictment or information, but it also delineates the exact scope of subsection (a)(1)'s prohibition on multiple convictions. Application in either context turns on the meaning of included offense, which the Code defines by establishing *three alternative* tests. [Citation omitted.] [Emphasis added.]

This court initially recognized that three separate tests were established by the foregoing statute. For example, in *Lowe v. State*, 264 Ark. 205, 570 S.W.2d 253 (1978), the appellant argued that the trial court erred in instructing the jury on negligent homicide at his trial for manslaughter. This court held that under the third test in section 41-105(2)(c), now section 5-1-110(b)(3), negligent homicide was a lesser-included offense of manslaughter because the only difference between the two offenses was that negligent homicide required a lesser kind of culpable mental state than manslaughter. *See also King v. State*, 262 Ark. 342, 557 S.W.2d 386 (1977); *Harmon v. State*, 260 Ark. 665, 543 S.W.2d 43 (1976).

Until 1985, but for a few exceptions, this court continued to view the statute as providing three separate and alternative ways of defining a lesser-included offense. *See, e.g., Thomas v. State*, 280 Ark. 593, 660 S.W.2d 169 (1983); *Hill v. State*, 278 Ark. 194, 644 S.W.2d 282 (1983) (*per curiam*); *Akins v. State*, 278 Ark. 180, 644 S.W.2d 273 (1983); *Wilson v. State*, 277 Ark. 219, 640 S.W.2d 440 (1982) (*per curiam*); *Martin v. State*, 277 Ark. 175, 639 S.W.2d 738 (1982) (*per curiam*); *Brewer v. State*, 277 Ark. 40, 639 S.W.2d 54 (1982); *Barnum v. State*, 276 Ark. 477, 637 S.W.2d 534 (1982) (*per curiam*); *Rowe v. State*, 275 Ark. 37, 627 S.W.2d 16 (1982) (*per curiam*); *Swaite v. State*, 272 Ark. 128, 612 S.W.2d 307 (1981); and *Earl v. State*, 272 Ark. 5, 612 S.W.2d 98 (1981) (collectively holding that an offense is a lesser-included offense if it is established by proof of the same or fewer elements required to establish the greater offense). *See also James v. State*, 280 Ark. 359, 658 S.W.2d 382 (1983) (holding that, under the third statutory test, an offense is included in another if they are of the same generic class and differ only in the degree of seriousness of injury). *But see Allen v. State*, 281 Ark. 1, 660 S.W.2d 922 (1983), *cert. denied*, 472 U.S. 1019 (1985); and *Foster v. State*, 275 Ark. 427, 631 S.W.2d 7 (1982) (disregarding two of the three statutory tests and holding that an offense was not a lesser-included offense because it required proof beyond those elements required to commit the greater offense).

In *Thompson v. State*, 284 Ark. 403, 682 S.W.2d 742 (1985), that all changed. There, the appellant contended that it was error for the trial court to refuse to instruct the jury that theft is a lesser-

included offense of robbery. This court rejected her argument, but not on the basis of the statutory tests. Rather, without explanation, this court reverted to pre-code decisions, requiring three criteria to establish lesser-included offenses, holding:

> [A]n offense is not a lesser included offense solely because a greater offense includes all of the elements of an underlying offense. The lesser included offense doctrine *additionally* requires that the two crimes be of the same generic class and that the differences between the offenses be based upon the degree of risk or risk of injury to person or property or else upon grades of intent or degrees of culpability.

*Id.* at 407-08, 682 S.W.2d at 745. Since *Thompson*, this court has repeatedly applied those three criteria with little or no mention of the statutory law. *See, e.g., Hill*, 344 Ark. 216, 40 S.W.3d 751; *Goodwin*, 342 Ark. 161, 27 S.W.3d 397; *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999); *McElhanon v. State*, 329 Ark. 261, 948 S.W.2d 89 (1997); *Brown v. State*, 325 Ark. 504, 929 S.W.2d 146 (1996); *Tackett v. State*, 298 Ark. 20, 766 S.W.2d 410 (1989); *Henderson v. State*, 286 Ark. 4, 688 S.W.2d 734 (1985). *But see Sullivan v. State*, 289 Ark. 323, 711 S.W.2d 469 (1986) (relying on the earlier test established in *Gaskin*, 244 Ark. 541, 426 S.W.2d 407, that to constitute an included offense, all the elements of the lesser offense must be contained in the greater offense which contains certain elements not in the lesser offense).

■ The holding in *Thompson* and its successors is in direct conflict with the plain language of section 5-1-110. Accordingly, we retreat from those holdings to the extent that they conflict with the statutory law. We wish to make clear from our decision today that the determination of when an offense is included in another offense depends on whether it meets one of the three tests set out in section 5-1-110(b)(3). With this holding in mind, we review the merits of the issue in this case.

## I. Lesser-Included Offense

Although Appellant was actually charged with *attempted* first-degree murder and sought an instruction on *attempted* second-degree murder, our resolution of this appeal requires us to initially determine whether second-degree murder is a lesser-included offense of first-degree murder. Appellant was charged with attempted first-degree murder under section 5-10-102(a)(2), which

provides that a person commits first-degree murder if "[w]ith a purpose of causing the death of another person, he causes the death of another person." He sought an instruction under section 5-10-103(a)(1), which provides that a person commits second-degree murder if "[h]e knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life." He asserts that the requirement of "extreme indifference" is part of the culpable mental state of the perpetrator. Thus, he asserts that this version of second-degree murder differs from purposeful first-degree murder only to the extent that it requires a lesser culpable mental state, as provided in section 5-1-110(b)(3).

The State, on the other hand, argues that the phrase "under circumstances manifesting extreme indifference to the value of human life" is an additional element of the crime of second-degree murder, not merely a part of the mental state. It contends that the holding in *Byrd*, 337 Ark. 413, 992 S.W.2d 759, is directly on point. We disagree.

■ The phrase "under circumstances manifesting extreme indifference to the value of human life" is found in numerous criminal offenses involving injury or death to persons. Regardless of the offense in which it appears, however, this court has consistently viewed that phrase as part of the proof of the actor's mental state. *See, e.g., Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000); *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996); *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996); *Tigue v. State*, 319 Ark. 147, 889 S.W.2d 760 (1994); *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994); *Burnett v. State*, 295 Ark. 401, 749 S.W.2d 308 (1988); *Nolen v. State*, 278 Ark. 17, 643 S.W.2d 257 (1982); *State v. Vowell*, 276 Ark. 258, 634 S.W.2d 118 (1982); *Martin v. State*, 261 Ark. 80, 547 S.W.2d 81 (1977).

■ In the first of those cases, *Martin*, this court held that "the phrase 'circumstances manifesting extreme indifference to the value of human life' indicates that the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused." *Id*. at 84, 547 S.W.2d at 83. Extreme indifference is thus "in the nature of a culpable mental state . . . and therefore is akin to 'intent.'" *Vowell*, 276 Ark. at 260, 634 S.W.2d at 119 (citing *Martin*, 261 Ark. 80, 547 S.W.2d 81). Offenses requiring extreme indifference involve actions that "evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim." *Tigue*, 319 Ark. at 152, 889 S.W.2d at 762. In the case of

capital murder under Ark. Code Ann. § 5-10-101(a)(9) (Repl. 1997), which requires proof that the defendant knowingly caused the death of a person fourteen years old or younger under circumstances manifesting extreme indifference, this court has held that the requirement of extreme indifference goes to the perpetrator's intent, such that he must act with deliberate conduct that culminates in the death of a person. *See Branstetter*, 346 Ark. 62, 57 S.W.3d 105. But for the required age of the victim, the capital-murder statute at issue in *Branstetter* mirrors the version of second-degree murder at issue here.

The State's reliance on this court's holding in *Byrd*, 337 Ark. 413, 992 S.W.2d 759, is misplaced. There, the defendant was charged with first-degree murder under section 5-10-102(a)(3), which requires proof that the defendant "knowingly caus[es] the death of a person fourteen (14) years of age or younger" at the time of the crime. *Id*. at 425-26, 992 S.W.2d at 766. At trial, Byrd sought an instruction for second-degree murder, that he knowingly caused the death of another person under circumstances manifesting extreme indifference to the value of human life. The trial court refused the instruction, and this court affirmed. This court held that second-degree murder was not a lesser-included offense of the type of first-degree murder charged in that case, because "the element of causing a death under circumstances manifesting extreme indifference to the value of human life is not an element of the charge for first-degree murder of a person aged fourteen years or younger." *Id*. at 426, 992 S.W.2d at 766. By using the word "element," the State contends that this court effectively concluded that the "extreme indifference" language was an attendant circumstance that must be proven separate and apart from the required mental state. We disagree.

The holding in *Byrd* is clearly limited to the situation where the perpetrator is charged with first-degree murder by knowingly causing the death of a person fourteen years old or younger. Second-degree murder is not a lesser-included offense of that type of first-degree murder, because it requires that the accused act knowingly with extreme indifference, as opposed to just knowingly. This is as far as the holding in *Byrd* extends. It does not extend to the type of first-degree murder at issue here, requiring that the accused purposely cause the death of another. Thus, *Byrd* does not control the issue in this case.

█ Here, Appellant was charged with attempted first-degree murder, in that, with the purpose of causing the death of another

person, he attempted to cause the death of his ex-girlfriend. The requisite mental state to commit first-degree murder is "purposely." Arkansas Code Annotated § 5-2-202(1) (Repl. 1997) provides: "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result." The mental state of "purposely" includes that of "knowingly." *See* Ark. Code Ann. § 5-2-203(c) (Repl. 1997). "Knowingly" is defined as follows:

> A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

Section 5-2-202(2). We agree with the court of appeals that the definition of "purposely" encompasses the culpable mental state of acting knowingly with extreme indifference, which requires deliberate conduct with a knowledge or awareness that one's actions are practically certain to bring about the prohibited result. The combination of knowledge and extreme indifference requires proof that the defendant acted with more than mere knowledge, but less than purposeful intent. Thus, second-degree murder under section 5-10-103(a)(1) is a lesser-included offense of first-degree murder under section 5-10-102(a)(2), as it differs from the greater offense only to the extent that it requires a lesser kind of culpable mental state. *See* section 5-1-110(b)(3). Accordingly, it was error for the trial court to refuse to instruct the jury on attempted second-degree murder.

## II. Proffered Jury Instruction

■ Alternatively, the State urges that we may affirm the conviction in this case on the ground that the instruction proffered by Appellant did not accurately state the law. The State admits that the proffered instruction was taken directly from AMCI 2d 501. The State also admits that it did not make any objection to the form of the instruction in the trial court. Notwithstanding, the State asks us to affirm because the trial court reached the right result, only for a different reason. We agree that this court may affirm the trial court's ruling if it was the right result, even though the trial court announced the wrong reason. *See, e.g., Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001); *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Hagen v. State*, 315 Ark. 20, 864 S.W.2d 856 (1993).

However, this affirmance rule presupposes that a ruling on the issue was made by the trial court.

▪ Here, the record reflects that Appellant asked the trial court to instruct the jury on the lesser-included offense of attempted second-degree murder. The prosecution objected on the ground that criminal attempt is a purposeful act, while second-degree murder is a knowing act, and that one cannot purposely commit a knowing offense. The trial court agreed and refused to instruct the jury on the lesser-included offense. The issue of the sufficiency of the proffered instruction was not part of the trial court's ruling. Indeed, there is nothing to indicate that the trial court was even remotely concerned with the language of the instruction itself. Thus, the affirmance rule is not applicable. This is not a case where the trial court found the instruction insufficient because it misstated the first required element and the State asked us to affirm the ruling on the ground that the instruction misstated the second element. The affirmance rule could be applied in that situation. Here, there was no ruling whatsoever on the language of the instruction. Without a ruling on this issue, there is nothing for us to review.

▪ Moreover, we cannot review this particular issue because the trial court did not make any findings regarding the sufficiency of the proffered instruction. The instruction proffered in this case is a model instruction, taken directly from AMCI 2d 501. When this court promulgated the second edition of the model jury instructions for criminal cases, it entered an order on their proper usage. *See In Re: Arkansas Model Criminal Instructions*, 264 Ark. Appx. 967 (1979) *(per curiam)*. This order directed that "the AMCI instruction shall be used unless the trial judge finds that it does not accurately state the law. In that event he will state his reasons for refusing the AMCI instruction." *Id. See also Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999); *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998); *Calloway v. State*, 330 Ark. 143, 953 S.W.2d 571 (1997); *Webb v. State*, 326 Ark. 878, 935 S.W.2d 250 (1996); *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943, *cert. denied*, 519 U.S. 982 (1996); *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994); *Moore v. State*, 317 Ark. 630, 882 S.W.2d 667 (1994); *Campbell v. State*, 294 Ark. 639, 746 S.W.2d 37 (1988) (collectively holding that the trial court should not give a non-model instruction unless it finds or concludes that the model instruction does not accurately state the law). Thus, our cases require a ruling by the trial court regarding the correctness of the model instruction before this court will find error. This was not done here.

■ Additionally, were we to entertain the State's argument in this case, we would be placing Appellant in a particularly unfair position. Had this argument been raised below, defense counsel undoubtedly would have been given the opportunity to alter the language of the instruction to satisfy the State's disagreement. It would be unduly harsh to affirm the conviction, knowing that Appellant was not given an opportunity to revise any alleged inaccuracies in the instruction. Accordingly, we will not reach the merits of the State's argument on this point.

### III. Rational Basis

■ ■ Lastly, the State argues that we may affirm the trial court's refusal to instruct on the lesser-included offense of attempted second-degree murder because there was no rational basis for giving the instruction. We recently set out the standard for instructing the jury on lesser-included offenses:

> No right has been more zealously protected by this court than the right of an accused to have the jury instructed on lesser-included offenses. *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992); *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980). It is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *See Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001); *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). Thus, we will affirm the trial court's decision to exclude an instruction on a lesser-included offense only if there is no rational basis for giving the instruction. *Id. See also* Ark. Code Ann. § 5-1-110(c) (Repl. 1997).

*Brown v. State*, 347 Ark. 44, 47, 60 S.W.3d 422, 424 (2001). Accordingly, if there was at least the slightest evidence to warrant the instruction, we must reverse and remand for a new trial.

The evidence at trial revealed that Appellant had been dating Sarah Battung for two and one-half years before she broke off the relationship on June 30, 1999. After the break-up, Appellant tried repeatedly to get back together with her and continued to call her. Battung resisted his efforts. At some point, Battung obtained a no-contact order against Appellant. On the evening of August 11, 1999, Battung was staying at Rodney Wilson's apartment. Appellant had made repeated telephone calls to Wilson's apartment that evening trying to apologize to Battung. Battung refused to talk to

Appellant and hung up on him several times. Around midnight, Appellant called again. This time, Battung yelled and cursed at him. While she was on the telephone, one of the men present in Wilson's apartment walked over to Battung and gave her a kiss. Appellant could tell what had happened, and he became angry. He then told Battung that he was going to kill her. Battung did not believe Appellant's threats, but she told him that she was going to call the police in the morning. She then hung up the phone. Appellant called right back and told Battung that he was sorry and that he had said what he said because he was mad.

Thereafter, Appellant's sister, Trineka McCoy, who was one of five or six persons present in Wilson's apartment, went out onto the balcony and discovered Appellant sitting there in a chair. Trineka described Appellant as looking pretty upset. She warned him not to go inside the apartment. Disregarding his sister's instruction, Appellant entered the apartment and began arguing and fighting with two men. He also accused Battung of sleeping with one of the men. Battung was walking from the kitchen to the couch when she saw Appellant enter the apartment. She then sat down on the couch and began to dial 911. Appellant asked her if she was calling the police, and she stated that she was. Appellant then began shooting at her.

■ We view this proof as providing at least the slightest evidence that Appellant acted knowingly with extreme indifference to the value of human life. We disagree with the dissent that the proof unquestionably shows that Appellant acted with the purpose to kill Battung. Although Appellant did threaten to kill Battung just before the shooting, he also apologized to her immediately thereafter and told her that he had made the threat because he was mad. Moreover, there was evidence showing that Appellant shot at Battung in an attempt to stop her from calling the police, not for the purpose of killing her. The testimony demonstrates that Appellant only fired his gun after Battung told him that she was calling the police. Based on this evidence, the jury could have found that Appellant fired at Battung knowing that his conduct was practically certain to cause her death, but being extremely indifferent to the value of human life. Accordingly, it was error for the trial court to refuse to instruct the jury on the lesser-included offense of attempted second-degree murder. We thus reverse the judgment of conviction and remand for a new trial.

Circuit Court reversed and remanded; Court of Appeals affirmed.

ARNOLD, C.J., and GLAZE, J., dissent.

TOM GLAZE, Justice, dissenting. I respectfully dissent on the basis that no rational basis existed on which to instruct the jury as to second-degree murder. To explain, I turn to the statutory history leading to our law defining first-degree and second-degree murder.

In 1975, the General Assembly enacted Act 280, which reformed, revised, and codified Arkansas's substantive criminal law. Section 1502 of Act 280, pp. 549-560, defined murder in the first degree as follows:

> (1) A person commits murder in the first degree if:

> (a) acting alone or with one or more other persons, he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony, or in the immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life, or

> (b) with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person.

> . . . .

Section 1503 of Act 280, pp. 600-601, defined second-degree murder as follows:

> (1) A person commits murder in the second degree if:

> (a) with the purpose of causing the death of another person, he causes the death of any person; or

> (b) he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or

> (c) with the purpose of causing serious physical injury to another person, he causes the death of any person.

> . . . .

In the First Extraordinary Session of 1987, the General Assembly enacted Act 52, which revised the above definitions of first-degree murder by adding a new subsection (c) to read as follows:

> (c) under circumstances manifesting cruel or malicious indifference to the value of human life, he knowingly causes the death of a person fourteen years of age or younger.

This new subsection was the General Assembly's response, reflecting dissatisfaction with this court's split decision in *Midgett v. State*, 292 Ark. 278, 729 S.W.2d 410 (1987), where the court found no evidence of premeditation and deliberation to prove first-degree murder where a child's death was caused from a beating at the hands of his drunken father; in *Midgett* this court reduced the father's conviction to second-degree murder.

And finally, the General Assembly in 1989 enacted Act 856, which basically revised the homicide statutes as follows:

> (1) It moved the first-degree murder provision, "with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person," to be included as an element of the offense of capital murder. *See* Ark. Code Ann. § 5-10-101(a)(4).

> (2) It revised the second-degree murder offense, removing the provision, "with a purpose of causing the death of another person, he causes the death of another person," and placing that provision in the statute defining first-degree murder. *See* Ark. Code Ann. § 5-10-102(a)(2).

> (3) And as pointed out in (2), Act 856 reduced the second-degree statute to two elements only: One, a person commits murder in the second degree if he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or, two, with the purpose of causing serious physical injury to another person, he causes the death of any person.

After noting the changes made as a result of Acts 52 and 856 set out above, the two following changes are especially pertinent to the case before us: (1) the first-degree murder statute, section 5-10-102(a), now embodies the offense element, "with a purpose of causing the death of another person, he causes the death of another

person," and (2) the second-degree murder statute, section 5-10-103(a), no longer includes that offense element.

These foregoing changes in elements are particularly significant in light of the evidence offered at Mr. McCoy's trial. Here, his victim, Sarah Battung, testified that, by telephone, McCoy told her that he was going to kill her. McCoy subsequently went to Sarah's apartment, where some of her friends were present. McCoy looked like he was trying to fight Sarah's friends, and Sarah started to dial 911 on the phone. McCoy asked, "What are you doing? Are you calling the police?" Sarah said, "Yes." McCoy then pointed a gun directly at Sarah and started shooting in rapid succession, hitting her once in her side and another time in her back. She testified that there was no one between her and him.

In the foregoing evidence, McCoy unquestionably attempted to purposely cause Sarah's death as provided in section 5-10-102(c)(2), as amended by Act 856 of 1989.[1] Prior to 1989, section 5-10-103, the second-degree murder statute and its "purposely" element, would have applied to the offense before us; however, since 1989, that is no longer true. McCoy argues the second-degree murder statute still applies, because under section 5-10-103(a)(1), he knowingly attempted to cause Sarah's death *under circumstances manifesting extreme indifference* to the value of human life. However, to read section 5-10-103(a)(1) in this way suggests there is no difference between the language used in the first-degree murder provisions 5-10-102(a)(2) and -103(a). In other words, the General Assembly did a meaningless act when it revised those two statutes so the "purposely" provision was removed from section 5-10-103(a) to 5-10-102(a)(2). I cannot agree.

This court has distinguished the phrase "circumstances manifesting extreme indifference to the value of human life" to mean that the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused. *Martin v. State*, 262 Ark. 80, 547 S.W.2d 81 (1977); *see also Tigue v. State*, 319 Ark. 147, 889 S.W.2d 760 (1994). To act "purposely," on the other hand, is when a person acts with the conscious object to engage in conduct to cause such a result — in this case, when McCoy acted with the purpose to cause Sarah's death. McCoy told Sarah he was going to kill her, and he acted on that by going to her apartment,

---

[1] Purposely is defined by the criminal code as when a person acts purposely with respect to his conduct as a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann. § 5-2-202(1) (Repl. 1997).

pointing his gun directly at her, and firing and unloading it at her, hitting her two times in vital parts of her body.

This case is not a situation in which the State had to demonstrate McCoy's mental state by an additional showing of extreme indifference to human life by attendant circumstances. Here, his conscious object was evident by his telling Sarah he intended to kill her, and he immediately proceeded to act on that objective. McCoy's mental state was made obvious by his sole actions. For McCoy's acts to fall within the second-degree murder statute, the evidence must have shown that the *attendant circumstances manifested extreme indifference* to the value of human life. For example, this court has found such attendant circumstances when a defendant fires his gun into a crowd, *see Johnson v. State*, 270 Ark. 992; 606 S.W.2d 752 (1980); when a father repeatedly beat his frail son who died as a result, *see Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); or when, although denying any knowledge of his accomplices' plans to kill the victim, the defendant joined accomplices in a robbery which resulted in the victim's death, *see Hutts v. State*, 342 Ark. 278, 28 S.W.3d 265 (2000).

In the present case, the facts simply do not support a finding of such attendant circumstances. Had the facts been different — for example, had McCoy fired randomly into the room where the party was taking place — then perhaps I could agree with the majority that there was the slightest evidence to support the giving of the lesser instruction. However, McCoy aimed and fired directly at Sarah, shortly after he said he was going to kill her. This is evidence of a *purposeful* mental state, not evidence of an awareness of attendant circumstances.

In conclusion, the majority opinion correctly states that it is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by the slightest evidence. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002). However, the trial court may refuse to offer a jury instruction on an included offense when there is no rational basis for a verdict acquitting the defendant of the charged offense and convicting him of the included offense. *Id*. As already alluded to above, because McCoy acted purposely in his attempt to kill Sarah, but failed to present evidence showing there were attendant circumstances that resulted in causing her to be shot, I would affirm McCoy's conviction.

ARNOLD, C.J., joins this dissent.