2013 Ark. 140

**Phillip HOLLOWAY, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–836.**

Supreme Court of Arkansas.

April 4, 2013.

Rehearing Denied May 9, 2013.

Jeff Rosenzweig, for appellant.

Dustin McDaniel, Att'y Gen., by: Kathryn Henry, Ass't Att'y Gen., for appellee.

CLIFF HOOFMAN, Justice.

Appellant Phillip Holloway appeals from the circuit court's denial of his petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. He argues that his trial counsel was ineffective (1) for failing to preserve for appeal allegations of police and prosecutorial misconduct, (2) for failing to properly object to several issues related to lesser-included offenses, and (3) for failing to object to a portion of the medical examiner's testimony. We affirm.

On July 25, 2008, Holloway was charged with first-degree murder in connection with the death of his wife, Erma Holloway. The jury convicted Holloway of second-degree murder and sentenced him to thirty years' imprisonment. The Arkansas Court of Appeals affirmed the judgment in *Holloway v. State*, 2010 Ark. App. 767, 379 S.W.3d 696. Holloway filed a timely Rule 37.1 petition, which was denied by the circuit court on May 17, 2011, without a hearing. Holloway also filed a motion for reconsideration, asserting that the circuit court had failed to rule on certain issues raised in his petition. The motion for reconsideration was denied on July 14, 2011, and Holloway filed a timely notice of appeal from this order, as well as the order denying his petition.

A summary of the evidence presented at Holloway's trial in support of his conviction is helpful in understanding the issues presented on appeal. On the morning of July 23, 2008, law enforcement officers responded to a 911 call made by Holloway's friend, who reported that he and Holloway had found Erma's body in a pond located on Holloway's farm. When the officers arrived at the scene, Holloway was sitting at the edge of the pond, holding Erma's body. The officers noticed that Erma had abrasions to her head, nose, lip area, right elbow, and legs, and that she had dried blood underneath her nose and above her lip.

When Holloway was questioned about the events leading up to his wife's death, he stated that he and Erma, who did not live together, had gotten into an argument the night before and that because they had been drinking, he did not want to let her drive home. Holloway stated that he took Erma's keys from her, and he eventually admitted that he had gotten into a physical struggle with her as she attempted to leave, grabbing her and slinging her backward into a recliner, which tipped over. Holloway further admitted that he had kicked Erma on the hips and on the side while she was lying on the floor and claimed that she had also kicked him. At that point, Holloway stated that his phone rang and that his neighbor asked for permission to fish in Holloway's pond, which he granted. According to Holloway, while he was on the phone, Erma found a second set of keys and drove away from the residence. Holloway stated that he saw gravel flying as she drove away and then saw from her car's taillights that she had stopped down the road. He got into his all-terrain vehicle to go look for her and stated that he did not find anything. He then claimed that he called her residence several times that evening, but she did not answer. The next morning, Holloway was working on his farm with his friend when he noticed Erma's body floating in the pond.

In his interview with police, Holloway acknowledged that he had been convicted of domestic battery against Erma in 2005,

after he had beaten her repeatedly with a belt, and that he served one year in jail for this crime. However, he continued to assert that he had nothing to do with Erma's death, claiming that she had driven away the night before he found her body in the pond.

Police officers searched Holloway's properly and noticed a path of vehicle tracks heading into the pond. A dive team then located and retrieved Erma's vehicle, and a video recording of the retrieval was admitted into evidence. Both divers testified that neither the doors nor the windows of the car were open when they located it in the murky water, although one of the divers explained that he initially mistook an open wheel well for a door until he realized that the front of the car was actually facing toward the shore of the pond. The officers present during the search also testified that the vehicle's doors and windows were closed when it was towed from the water, and the gearshifter was in the neutral position. During a search of Holloway's residence, a drop of blood was found underneath the recliner, and blood was also recovered from a rug in front of the recliner. Testing indicated that this blood was Erma's. One of the officers also testified that he noticed a strong odor of bleach in the residence, and rags were located in and around the washing machine, which had rust |₄stains on them despite having been bleached.

In addition to the officers' testimony, the State presented evidence from a certified automotive technician who examined Erma's vehicle and concluded that there was a ninety-five-percent chance that the engine was not running when it hit the water. Dr. Frank Peretti, the medical examiner who performed an autopsy on Erma, testified that she had a broken nose, two black eyes, broken ribs, injuries to her neck, and bruising over her entire body. He testified that there was a violent struggle and ruled that Erma's death was a homicide resulting from blunt-force trauma. Dr. Peretti concluded that Erma did not drown because her lungs did not exhibit the classic signs of drowning such as heavy lungs, froth, and edema.

In Holloway's direct appeal, substantial evidence was found to support his second-degree-murder conviction, although his claims, related to police and prosecutorial misconduct, lesser-included offenses, inconsistent jury-verdict forms, and a portion of Dr. Peretti's testimony, were held not to be preserved for appeal. *Holloway*, 2010 Ark. App. 767, at 9–12, 379 S.W.3d at 702–03. In his Rule 37.1 petition, Holloway asserted that his trial counsel was ineffective for failing to preserve these issues, and he now presents these same arguments on appeal from the denial of his petition.

■■■ A circuit court's denial of a Rule 37 petition will not be reversed unless the court's findings are clearly erroneous. *Lockhart v. State*, 2011 Ark. 461, 2011 WL 4491035. In an appeal from a denial of postconviction relief based on a claim of ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the circuit court clearly erred in holding that |₅counsel's performance was not ineffective. *Lockhart*, 2011 Ark. 461, at 2, 2011 WL 4491035. Under the *Strickland* test, the petitioner must show that counsel's performance was deficient and also that counsel's deficient performance prejudiced the defense to the extent that the appellant was deprived of a fair trial. *Lowe v. State*, 2012 Ark. 185, 423 S.W.3d 6 With respect to the prejudice requirement, a petitioner must demonstrate that there is a reasonable probability that the factfin-

der's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the trial. *Id.* There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and a petitioner has the burden of overcoming this presumption by identifying specific acts or omissions of counsel that, when viewed from counsel's perspective at the time of trial, could not have been the result of professional judgment. *Id.* The burden is also entirely on appellant to provide facts affirmatively supporting the claims of prejudice. *Id.*

For his first point on appeal, Holloway argues that trial counsel's failure to preserve for appeal his allegations of police and prosecutorial misconduct constituted ineffective assistance of counsel because this misconduct would have entitled him to a reversal of his convictions. Holloway argued in his Rule 37 petition that the law enforcement officers who conducted the investigation into Erma's death failed to note in any of their reports that there was evidence to indicate that either the driver's side door or window of the vehicle was open. Specifically, Holloway claimed that none of the officers reported that one of the divers had initially believed that the driver's window was open; that Sheriff Carpenter's report omitted the fact that he saw water spilling out from the driver's side door; and that all the officers stated that the passenger compartment was securely closed in their affidavits in support of the search warrants, despite close-up pictures of the driver's side door showing that this door was not "shut flush" like the other doors. Holloway thus contended that the police and the prosecution presented false evidence on "the linchpin of the State's case," which was the condition of the car, and that he was entitled to a

reversal on this basis had his trial counsel properly preserved the argument. He also argued that no pictures were found to show that the gearshifter was in the neutral position when the car was pulled from the pond, despite the officers' assertions that it had been photographed. Holloway claimed that the metadata from the cellphone camera used to take pictures of the car that day indicated that there were nine photos taken and that one image was apparently missing. He argued that this demonstrated that the prosecution had withheld or destroyed exculpatory evidence.

In its order denying postconviction relief, the circuit court noted that trial counsel had thoroughly presented and argued these matters to the jury and that these issues thus became a part of the weight or sufficiency of the evidence. The court found that the outcome of the trial was clearly within the parameters of the charges and the evidence presented and that this allegation in Holloway's petition was without merit. In his motion for reconsideration, Holloway claimed that the circuit court failed to rule on his specific allegations, instead basing its ruling on the sufficiency of the evidence. Holloway also argued that the court did not specify the parts of the file that it relied on in reaching its conclusion. In the circuit court's order denying Holloway's motion for reconsideration, the court expounded on its previous ruling on the issue, noting that the *Strickland* test for ineffective assistance of counsel requires a showing that the claimant was deprived of a fair trial. Because these allegations of misconduct were "repeatedly presented to the jury from the beginning of jury selection until the end of closing arguments," the court found that it was within the jury's purview to accept or reject these allegations and that Holloway had not shown that he had been prejudiced by counsel's failure to

properly preserve the matter for appeal. The court also listed numerous pages of the transcript on which it relied in its finding.

While Holloway continues to assert on appeal that the circuit court failed to properly address his allegations on this issue and instead discussed only the sufficiency of the evidence, we agree with the circuit court that all these allegations of misconduct were in fact thoroughly presented to the jury by trial counsel, primarily through cross-examination of the State's witnesses regarding the condition of the vehicle, but also through the testimony and evidence presented by the defense's own experts, such as his accident-reconstruction and mechanical experts. As the State contends in its brief, Holloway has failed to affirmatively show that the police or the prosecution either knowingly presented false evidence or withheld exculpatory evidence; instead, the evidence relating to these allegations of misconduct was conflicting and in essence challenged the credibility of the State's witnesses. In order to satisfy the *Strickland* test, Holloway must demonstrate that there is a reasonable probability that the outcome of the trial would have been different without counsel's errors. *Lowe, supra.* Because the jury was adequately apprised of these allegations of misconduct, but did not give credit to them, Holloway was unable to meet his burden of proving prejudice from counsel's errors, and the |₈circuit court's finding on this issue was not clearly erroneous.

In his petition, Holloway also raised several arguments pertaining to counsel's failure to properly preserve for appeal issues involving lesser-included offenses. He first argued that the circuit court clearly erred by rejecting his claim of ineffective assistance due to his counsel's failure to preserve an objection to the jury being instructed on all lesser-included offenses to the charged offense of first-degree murder. While his trial counsel did originally argue to the circuit court that Holloway did not wish to have the jury instructed on the lesser-included offenses of second-degree murder, manslaughter, and negligent homicide because he was asserting total innocence, the appellate court held that counsel had withdrawn the objection after he failed to further object when the State argued that there was a rational basis to submit instructions on these offenses. Citing *Doby v. State*, 290 Ark. 408, 720 S.W.2d 694 (1986), Holloway asserted that there was no rational basis for the lesser-included offenses in this case given his defense and that, had his counsel properly preserved an objection, he would be entitled to a dismissal of his conviction.

■ It is reversible error for a circuit court not to give a lesser-included instruction when there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002); *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995); Ark.Code Ann. § 5–1–110(c) (Supp.2011). In *Jones*, we interpreted Ark.Code Ann. § 5–1–110(c) and held that this statute does not delegate the decision regarding the propriety of a lesser-included instruction to the defendant but instead requires that the trial court determine whether an instruction on a |₉lesser-included offense should be given. Thus, we reversed the trial court's refusal to give jury instructions on the lesser-included offenses of second-degree murder and manslaughter based solely on the court's reasoning that it was the defense's right "to gamble" and not to request lesser-included offenses. *Id.* at 45556, 903 S.W.2d at 173. We distinguished our holding in *Doby, supra*, as the defendant in *Doby* asserted that he

was entirely innocent of any crime, whereas the defendant in Jones did not deny shooting the victim but instead presented a defense based on justification. *Id.*

■ In this case, the circuit court found that there was no merit to Holloway's contention because there was a rational basis for the lesser-included instructions based on the evidence presented at trial. While Holloway denied killing Erma, he admitted that he had engaged in a physical struggle with her in his attempt to stop her from leaving the house and that she may have hit her head when he shoved her into the recliner and it tipped over. He then claimed that she sped off in her vehicle and that it must have ended up in the pond. While Dr. Peretti testified that he believed that the cause of death was blunt-force trauma, not drowning, he also stated that the cause of death could have been a cardiac arrhythmia. In addition, the jury heard evidence from both parties' experts of a possible phenomenon called "dry drowning." Thus, even under Holloway's version of events, there was a rational basis for the jury to convict him of the lesser-included offenses to first-degree murder as there was at least some evidence from which the jury could have found that he acted with less than an intentional mental state in causing the death of his wife, and this case can therefore be distinguished from the situation in *Doby.* Because Holloway cannot show prejudice from counsel's failure to preserve this issue for appeal, the circuit court's finding on this issue is not clearly erroneous.

In his second argument relating to lesser-included offenses, Holloway contends that his trial counsel was ineffective for failing to preserve his objection to the second-degree-murder instruction because Ark.Code Ann. § 5–10–103(a)(1) (Repl. 2006), which provides that a defendant commits second-degree murder by knowingly causing the victim's death under circumstances manifesting an extreme indifference to the value of human life, is not a lesser-included offense of first-degree murder as defined in Ark.Code Ann. § 5–10–102(a)(2) (Repl.2006), which states that a defendant commits first-degree murder if, with the purpose of causing the death of another person, he causes the death of another person. "Purposely" is defined in Ark.Code Ann. § 5–2–202(1) (Repl.2006), which provides that a "person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result." Holloway argues that the language "circumstances manifesting extreme indifference to the value of human life" in the second-degree-murder instruction adds an extra element not present in the greater offense of first-degree murder and that counsel should have objected on this basis.

■ As the State responds, however, this court has previously rejected this argument in *McCoy v. State,* 347 Ark. 913, 924, 69 S.W.3d 430, 437 (2002), where we held that the definition of "purposely" encompasses the culpable mental state of acting knowingly with extreme indifference, which requires deliberate conduct with a knowledge or awareness that one's actions are practically certain to bring about the prohibited result. We stated that the combination of knowledge and extreme indifference "requires proof that the defendant acted with more than mere knowledge, but less than purposeful intent." *Id.* We held that second-degree murder under Ark.Code Ann. § 5–10–103(a)(1) is therefore a lesser-included offense of first-degree murder under section 5–10–102(a)(2), as it differs from the greater offense only to the extent that it requires a lesser kind of culpable mental

state. *Id.* Although Holloway relies on our holding in *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999), as support for his argument, we distinguished this case in *McCoy*, stating that the holding in *Byrd* is limited to a situation where the defendant is charged with first-degree murder by knowingly causing the death of a person fourteen years of age or younger. Because that is not the situation here, Holloway's argument that his trial counsel was ineffective for not preserving the issue is without merit, and the circuit court did not clearly err in denying his Rule 37 petition on this basis.

For his final argument pertaining to lesser-included offenses, Holloway contends that his trial counsel was ineffective for failing to timely object to the inconsistent verdict forms by the jury. The jury in this case completed the verdict form finding Holloway guilty of second-degree murder. However, the jury also completed the verdict forms finding Holloway not guilty of first-degree murder, manslaughter, and negligent homicide, even though it had been instructed not to consider the lesser-included offenses unless it first found him not guilty of the greater offense. Because his trial counsel failed to move for a mistrial at the earliest opportunity, the court of appeals declined to address the issue, finding that it was not preserved. *Holloway*, 2010 Ark. App. 767, at 11, 379 S.W.3d at 702–03.

We agree with the circuit court that even a timely mistrial motion based on inconsistent verdict forms would have been without merit here, as we have previously upheld the denial of a motion for mistrial under very similar circumstances in *Ray v. State*, 342 Ark. 180, 27 S.W.3d 384 (2000). In *Ray*, the jury returned verdict forms finding the defendant guilty of first-degree murder and not guilty of capital and second-degree murder, despite instructions from the trial court to complete only one of the verdict forms provided. We stated that this was not an inconsistency in the verdict forms, as we have generally found an "inconsistency" only where there is a logical impossibility or improbability implicit in the jury's findings as between jointly charged defendants. *Id.* at 183, 27 S.W.3d at 385–86. We held that the intent of the jury to convict the defendant of first-degree murder was clear and that even though the jury erred in returning all three forms instead of one form as instructed, there was no inconsistency and any error was harmless. *Id.*

Similarly, in the present case, it was clear that the jury intended to find Holloway guilty of second-degree murder, and there was no inconsistency in the verdict forms. Because any error by the jury in completing all the verdict forms was harmless, the circuit court did not clearly err in denying Holloway postconviction relief on this issue.

In his final point on appeal, Holloway argues that his trial counsel was ineffective for failing to object to Dr. Peretti's testimony about what happens when a vehicle is submerged in water. As Dr. Peretti was testifying at trial about his conclusion that drowning was not Erma's cause of death, Holloway's counsel objected to any opinions by Dr. Peretti about what happens when a car goes into water, arguing that this would exceed the scope of his expertise. The circuit court ruled that Dr. Peretti's testimony would be "limited to how he utilized his knowledge and experience in relation to making this decision regarding cause of death. If any of that information relates to what he utilized in making his decision, I think he can say that, because he is an expert in forensic[s]." Dr. Peretti went on to testify to the following:

[DEPUTY PROSECUTOR]: Did you use your 20 years of experience in forensic pathology and the facts you knew about this case and the condition of the body in making your determination as to the manner of death?

[DR. PERETTI]: Yes.

[DEPUTY PROSECUTOR]: Okay. What impact would the fact that the car was pulled from the pond with windows up and the doors closed, what impact does that information have upon your analysis?

[DR. PERETTI]: Well, it—well, it's telling me, based on if those facts are true, I was trying to explain, you know, why I came to that conclusion about the car being in the water. Can I continue?

[DEPUTY PROSECUTOR]: As long as you base it on your experience that you have had and that you applied in this case?

[DR. PERETTI]: A lot of cases I have seen here in Arkansas, when, when cars go into water, [a] vast majority of the bodies are recovered inside the vehicle, because it is very difficult to get out of the vehicle. And the reason for that is: In order to open the door in a vehicle, you have to have equalized pressure. So, the car would have to fill up with water, okay. So, you would have to remain in the car, be calm, let the car fill up with water, and then open the door, okay, to get out of the vehicle. Second, once the door is opened and the car is in the water, you can't close it. You can't close the door, because of the pressure; the doors stay open.

Because Holloway's trial counsel failed to further object to Dr. Peretti's testimony, the appellate court held that any argument that Dr. Peretti exceeded the scope of permissible expert testimony was waived for appeal. *Holloway,* 2010 Ark. App. 767, at 12, 379 S.W.3d at 703. Holloway argued in his Rule 37 petition that he

was prejudiced by counsel's failure to properly preserve the issue because this inadmissible testimony by Dr. Peretti on the ⎣₁₄condition of the vehicle and the ability of Erma to exit the vehicle once submerged in water was the operative question in the case.

In its order denying Holloway's petition, the circuit court found that Dr. Peretti did not exceed the scope of his expertise because his testimony was clearly based on his twenty years of experience in forensic pathology, the facts he knew about the case, the condition of the body, and the cases he had seen in Arkansas where cars containing a body go into the water. The court noted that Dr. Peretti had stated that he was "not an expert on cars going into water," but that he was an expert on cause and manner of death and the interpretation of scenes based on his years of personal experience. The circuit court found that Dr. Peretti's testimony remained at all times within the realm of his expertise, and we agree. Dr. Peretti's testimony was confined to his knowledge and experience in determining cause of death and was in response to a line of questions demonstrating how he ruled out drowning as a cause of Erma's death. As the State argues, merely because an expert opinion embraces the ultimate issue in the case does not render it objectionable. *See Johnson v. State,* 292 Ark. 632, 639, 732 S.W.2d 817, 821 (1987). Further, even assuming that Dr. Peretti's testimony on this issue was erroneously admitted, it was cumulative to the testimony of the accident-reconstruction expert, Don Johnston, who stated that it would have been very difficult to open the vehicle door until it had completely filled up with water and that at that point, the door could be opened but could not be closed. Prejudice cannot be demonstrated where erroneously admitted evidence is merely cumulative

to other evidence that was properly admitted. *Wright v. State*, 368 Ark. 629, 249 S.W.3d 133 (2007). Thus, the circuit court's ruling on this issue was not clearly erroneous.

Because Holloway failed to meet his burden of demonstrating that his trial counsel's performance was deficient and that he was prejudiced by this deficient performance to the extent that he was deprived of a fair trial, the circuit court did not clearly err in denying his petition for postconviction relief without a hearing, and we affirm.

Affirmed.

DANIELSON, J., not participating.