Brandon HARDMAN *v.* STATE of Arkansas

CR 03-524

144 S.W.3d 744

Supreme Court of Arkansas
Opinion delivered February 5, 2004

*Bill Luppen*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Brandon Hardman appeals the capital murder conviction and life sentence he received for killing Antwan Jones. Hardman does not challenge the sufficiency of the evidence, so we recite the facts only briefly. Police officers responded to a call at 28th and Battery Streets in Little Rock on March 20, 2000. Upon arriving at the scene, they found a young man, Jones, lying on the ground with a bullet wound to the back of his neck. The area in which the shooting occurred was part of the "Vice Lords" gang territory. Hardman was a member of the "Folk" or "Gangster Disciple" gang. Hardman was eventually charged with and convicted of capital murder pursuant to Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997).

On appeal, Hardman raises three points for reversal: 1) throughout the trial, the State continuously referred to him by his gang name, "Little G," which he argues was unduly prejudicial; 2) the trial court erred in failing to instruct the jury on the lesser offenses of first-degree murder, second-degree murder, and man-slaughter; and 3) the court erred by preventing Hardman from arguing to the jury that intent was required to commit the homicidal act in the unlawful discharge capital murder offense.

We first address Hardman's argument that the State's use of his gang name, "Little G," was unduly prejudicial. He points to numerous instances wherein either the prosecutor or witnesses referred to him as Little G. However, though he claims that the prosecutor referred to him by this moniker eight times during opening arguments, he did not object once during the State's opening arguments. Because he failed to make a timely objection in the trial court, he has waived this argument on appeal. *See, e.g., Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407 (2001).

■ ■ Next, Hardman complains that the State's expert witness on gangs, Todd Hurd, told the jury that "Little G" stood for "Little Gangster." However, again, Hardman failed to object to this testimony. The law, of course, is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000); *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000). Hardman's failure to make a contemporaneous objection to this testimony prevents him from asserting on appeal any error on the part of the trial court for admitting the evidence. *Ferguson, supra; Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999); *Berger v. State*, 343 Ark. 413, 36 S.W.3d 286 (2001).

■ Hardman takes further issue with the State's questioning of witness Natasha Davis, contending that the prosecutor consistently called him Little G during direct examination. Hardman eventually objected to these references, saying he thought it was "more proper they use [Hardman's] real given name." The trial court responded, "Yeah, I think so"; when the prosecutor replied that some of the witnesses only knew Hardman as Little G, and not as Brandon, the court said, "[I]f they need referring to it, you can, but you've gone beyond that." In this instance, then, Hardman received the relief that he requested. It is a basic principle of law that where the appellant received the only relief he requested, he has no basis upon which to raise the issue on appeal. *Marshall v. State*, 342 Ark. 172, 27 S.W.3d 392 (2000); *Odum v. State*, 311 Ark. 576, 845 S.W.2d 524 (1993).

■ Finally, Hardman argues that, despite his objection and the court's comments, the State continued to refer to him as Little G during the questioning of other witnesses. However, Hardman again failed to object to this kind of questioning until another three witnesses — all of whom referred to him as Little G — had testified. When he finally objected, the following transpired:

DEFENSE: I'm still kind of concerned about continuing to call him Little G. It doesn't seem like it's really stopped.

STATE: I'm trying not to, but if they do it, I can't help it.

COURT: I don't have any problem with the way she's doing it, because some of these people — I think you need to first ask if they know who he is, but that's what they call him.

DEFENSE: Can't she ... say, "You know him as Little G, but his name is Brandon Hardman"?

COURT: I think she can cut down some of that; but if that's the way they know him, that's what they're going to call him.

Clearly, by waiting to object until this point in the trial, Hardman failed to raise an objection at the first opportunity. His failure to do so results in the objection not being preserved for appeal. *See Berger, supra; Hale v. State,* 343 Ark. 62, 31 S.W.3d 850 (2000). Further, when a party objects to a question when it is asked, but fails to object when it is repeated, the matter is not preserved for appeal. *Marshall, supra; Vaughn v. State,* 338 Ark. 220, 992 S.W.2d 785 (1999).

For his second point on appeal, Hardman argues that the trial court erred in refusing his proffered jury instructions on first-degree murder, second-degree murder, and manslaughter.[1] The proffered first-degree murder instruction provided that, "with the purpose of causing the death of Antwan Jones, Brandon Hardman caused his death." The proffered second-degree murder instruction stated that "Brandon Hardman knowingly caused the death of Antwan Jones under circumstances manifesting extreme indifference to the value of human life." The proffered manslaughter instruction provided that Hardman "recklessly caused the death of Antwan Jones."

Declining to give Hardman's proffered instructions, the trial court instead gave the jury the capital murder instruction based on § 5-10-101(a)(10), which provides that a person commits capital murder if he "purposely discharges a firearm from a vehicle at a person . . . and thereby causes the death of another person under circumstances manifesting extreme indifference to the value of human life." The trial court also instructed the jury pursuant to Ark. Code Ann. § 5-74-107(a) (Repl. 1997) — first-degree unlawful discharge of a firearm from a vehicle. This instruction informed the jury that it could find Hardman guilty of this offense if the State proved that Hardman knowingly discharged a firearm from a vehicle and thereby caused Jones's death.

The statute governing lesser-included instructions is Ark. Code Ann. § 5-1-110 (Repl. 1997). In particular, the statute

---

[1] Although Hardman mentions manslaughter in his point heading, he makes no specific argument with reference to this instruction in the text of his brief.

provides that a defendant may be convicted of one offense included in another offense with which he is charged. An offense is so included if:

> (1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged; or

> (2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included within it; or

> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpable mental state suffices to establish its commission.

§ 5-1-110(b).

■ This court made it clear in *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002), that "the determination of when an offense is included in another offense depends on whether it meets one of the three tests set out in section 5-1-110(b)."[2] On appeal, Hardman argues that he was entitled to his proffered first-degree instruction because, "in order to prove the offense of unlawful discharge capital murder, the State must prove that the conduct causing the death of a person must be done with a purposeful mental state." This is so, he claims, because § 5-10-101(a)(10) requires that the victim's death be caused under circumstances manifesting extreme indifference to human life, which itself requires proof of intent. Therefore, he contends, his requested instruction on first degree murder ("with the purpose of causing the death of another person, he causes the death of another person") should have been a lesser-included offense of capital murder under § 5-10-101(a)(10), because they both have a purposeful mental state element.

---

[2] Prior to the *McCoy* holding, our caselaw required that an offense must meet three criteria to be considered a lesser-included offense: (1) it must be established by proof of the same or less than all the elements of the greater offense; (2) it must be of the same generic class as the greater offense; and (3) it must differ from the greater offense based upon the degree of risk to persons or property or upon grades of intent or culpability. *See Goodwin v. State*, 342 Ark. 161, 27 S.W.3d 397 (2000); *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999).

■ A close reading of § 5-10-101(a)(10) reveals the error of Hardman's logic. In this statute, the act requiring the "purposeful" mental state is the act of discharging a firearm from a vehicle at a person. It is true that the end result of this purposeful act is "caus[ing] the death of another person under circumstances manifesting extreme indifference to the value of human life," which requirement this court has held "goes to the perpetrator's intent." *McCoy*, 347 Ark. at 923 (also stating that we have "consistently viewed that phrase as part of the proof of the actor's mental state"). Here, however, the proffered first-degree murder instruction contained an element not found in § 5-10-101(a)(10). That is, under the proffered instruction, the jury was required to find that Hardman acted "with the purpose of causing the death of another person." *See also* Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997). In other words, Hardman's first-degree murder instruction required the purposeful intent to be directed *at the act of causing the death*. Section 5-10-101(a)(10), on the other hand, requires the purposeful intent to be directed *at the act of discharging a firearm from a vehicle*; causing the death need only be done under circumstances manifesting extreme indifference to the value of human life, which this court has said means that the defendant "must act with deliberate conduct that culminates in the death of a person." *McCoy*, 347 Ark. at 923; *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001).

■ In *McCoy*, this court stated that the definition of "purposely" "encompasses the culpable mental state of acting knowingly with extreme indifference, which requires deliberate conduct with a knowledge or awareness that one's actions are practically certain to bring about the prohibited result." *McCoy*, 347 Ark. at 924. However, we have never held the inverse to be true — that is, that "acting with extreme indifference," as is required in § 5-10-101(a)(10), encompasses "purposely." Therefore, as the State argues, the proffered instruction — "with the purpose of causing the death" — actually contains a *higher* culpable mental state, with respect to the homicidal act, than the capital murder offense, § 5-10-101(a)(10), charged in the information. Because the proffered instruction does not differ from the offense charged only in the respect that a *lesser* kind of culpable mental state

suffices to establish its commission, the trial court did not err in declining to give Hardman's proffered first-degree murder instruction.

■ Likewise, the trial court did not err in refusing to give Hardman's proffered second-degree murder instruction. Hardman contends that the trial court's refusal to give his proffered instruction was error, because the second-degree murder instruction adds no element not contained in the unlawful discharge instruction. Again, however, the "knowing" element in the requested second-degree murder instruction references the causing of another's death; in the unlawful-discharge capital murder charge, the intent element goes to the discharge of the firearm. Thus, as with the rejected first-degree instruction, the second-degree murder instruction also would have required proof of an element — the intent attendant to the killing — not present in the unlawful-discharge capital murder instruction.

Hardman's third and final point on appeal is related to his second point. Here, he argues that the trial court erred in cutting him off when he began to argue, during closing arguments, that the State was required to prove that Hardman intended to kill Jones. During his close, defense counsel made the following statements:

> This shooting, in order to be capital murder, they must show beyond a reasonable doubt that Brandon Hardman did this shooting exhibiting extreme indifference to human life. It can't just be that he shot out a window at somebody, and that automatically makes it capital murder, the worst homicide offense we have in this state. It can't be that. The legislature didn't make it that easy for the State to prove capital murder. They put on that it had to be exhibiting an extreme indifference to human life, and what that means is an intent to cause that murder.

The State objected at that point, arguing that counsel's statements were not the law, and that the State did not have to prove the intent with respect to the death. The prosecutor stated, "You just have to cause the death, you don't have to have any intent as to the death. . . . [W]e do not have to prove that he intended to kill anyone. We don't have to show that he had the purpose to kill someone. We don't have to show that he knowingly killed someone. All we have to show is he purposely shot out [of] that car and caused the death under [circumstances showing]

extreme [indifference]." Relying on the language in the unlawful-discharge capital murder statute, the trial court agreed with the State, saying that "intent [to kill] does not appear in that instruction."

The trial court is given broad discretion to control counsel in closing arguments, and we will not interfere with that discretion absent a manifest abuse of discretion. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003); *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999); *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996)). It is the trial court's duty to maintain control of the trial and to prohibit counsel from making improper arguments. *Smith v. State, supra.*

On appeal, Hardman argues that the court's statement that "intent does not appear in that instruction" was in error. However, as discussed above, "unlawful discharge" capital murder only requires an intent with respect to the discharging of the firearm. While it is true that the death must occur under circumstances manifesting extreme indifference to the value of human life, this court has held that the phrase "circumstances manifesting extreme indifference to the value of human life" is "akin to intent." *McCoy*, 347 Ark. at 922. The requirement of extreme indifference "indicate[s] that the perpetrator of capital murder must act with deliberate conduct that culminates in the death of some person." *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000). However, while these cases say that "extreme indifference" is "akin to intent," none of them hold that the phrase is the functional equivalent of "purposely." The requirement that an act be done "purposely" in the statute refers only to the act of discharging a firearm; therefore, the trial court did not abuse its discretion in preventing Hardman from arguing that the State was required to prove a purposeful intent to kill.

For the foregoing reasons, Hardman's conviction and sentence are affirmed. The record has been reviewed for other reversible error, as required by Ark. Sup. Ct. R. 4-3(h), and none has been found.