Gregory E. PRICE *v.* STATE of Arkansas

CR 05-792 223 S.W.3d 817

Supreme Court of Arkansas
Opinion delivered January 19, 2006

*Phyllis J. Lemons* and *Gregory K. Crain*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. This appeal arises from the conviction and sentence of appellant, Gregory E. Price, by a Saline County jury for the death of Brian Wake. Appellant was convicted of first-degree murder, a violation of Ark. Code Ann. § 5-10-102 (Repl. 1997), a class Y felony, and was sentenced to life imprisonment. On appeal, appellant makes six allegations of error. We affirm the jury's verdict.

On August 23, 2003, the Saline County Sheriff's Department received a call that three juveniles found the body of Brian Wake at the Saline River. At trial, Chris Morrow stated that Wake came to his house at 12:20 a.m. and wanted Morrow to take him to the river. Morrow tried to persuade Wake to stay at his home, but Wake, who was intoxicated, refused and insisted on sleeping by the river. When they got to the river, Morrow noticed a white male and a white female on a motorcycle. Morrow dropped Wake off at the gate of a sod farm between 1:00 and 1:30 a.m.

Cole Drye testified that he and his friend, Jason Allen, arrived at the river at 2:30 a.m. to go coon hunting near the adjacent sod farm owned by Drye's boss, Scott Newcomb. Drye testified that he also saw the two individuals who were later identified as appellant and Althea Berry. According to Drye, appellant and Berry stood beside their motorcycle, speaking with Wake whom Drye had known for two years. Appellant tried to sell his motorcycle to Drye for $500.00. Drye helped Wake build a

fire, and he testified that Wake was "pretty drunk" at that point. When Drye and Allen finished their hunt, they saw Wake and appellant standing "toe to toe" as if they were ready to fight. Wake told them that appellant shot at him, but Drye didn't believe Wake's story.

Jason Allen, who hunted with Drye, also saw appellant, Berry, and Wake, and Wake told them that appellant shot at him three to five times. Drye testified that he and Allen asked Wake to come home with them, but Wake refused. Wake told Allen and Drye that he would ride home with Scott Newcomb, the owner of the sod farm.

Scott Newcomb testified that he received a call from his son at 2:41 a.m. that someone was driving in his fields. Newcomb testified that as he crossed the river, he saw a man and a woman sitting on a motorcycle. Newcomb stated that he received a call from Drye at 2:48 a.m., spoke to Wake, and told him that he would take Wake home. When he went back to the river, he could not find Wake, but he saw a motorcycle headlight about seventy-five to one hundred yards ahead of him.

Officer Aaron Washington of the Saline County Sheriff's Department stated in an affidavit supporting probable cause that he made contact with Althea Berry, who gave a taped audio interview. She stated that after she got off work, she and appellant went to the County Line Liquor store to get a six-pack of beer. Then they proceeded to the Saline River to talk. When they got to the river, Wake was there. Berry confirmed that Drye and Allen stopped to talk. Berry further stated that appellant and Wake began to argue, and later, appellant hit Wake with two large tree limbs from the fire. Berry further stated that she and appellant left the area and stopped at a local gas station to call 911 before heading to a motel.

Berry also testified at trial, where she stated that she and appellant arrived at the river between 1:00 and 1:30 a.m. According to Berry, Wake asked appellant for a ride to his house to get more beer. Appellant and Berry joined Wake's party. After everyone left, she heard "a scuffle" and saw appellant push Wake to the ground. She also saw appellant's hand go up and down a couple of times in Wake's direction. Appellant told Berry to put out the fire. Berry testified that she saw Wake lying motionless on the ground, and she assumed he was "beat up." She and appellant stopped at a convenience store and called 911. The next morning, appellant told Berry, "Keep it to yourself. Don't mention it."

Jeff Clift testified that he saw appellant in August of 2003 when appellant came to his house. According to Clift, appellant told him "[t]hat he thought that he had killed someone at the river." Clift testified, "He [appellant] said, 'I beat him and just kept hitting him over and over again.' " When appellant's wife went to the kitchen, appellant passed Clift a note that said, "This shit's for real." When she returned to the room, he burned the note. Clift tried to convince appellant to turn himself in to the police, but appellant's response was that he "didn't even feel bad about it." Additionally, Tina Clift, Jeff Clift's wife, testified that she heard appellant say, "I think I might have killed a guy." She called her sister to confirm that Wake had been killed at the river.

The State charged appellant with first-degree murder, naming Althea Berry as his co-defendant. Appellant was tried separately before a Saline County jury on January 13-14, 2005. At the close of the State's case-in-chief and at the close of all the evidence, appellant made a motion for directed verdict, which the circuit court denied. The jury found appellant guilty of first-degree murder and sentenced him to life imprisonment in the Arkansas Department of Correction. From this judgment and sentence, appellant brings his appeal.

For his first point on appeal, appellant argues that the circuit court erred in denying his motion for directed verdict. Specifically, appellant makes an accomplice-corroboration challenge in his directed-verdict motion, contending that there was no evidence, other than the testimony of the co-defendant and appellant's statements, that would support appellant's conviction.

The State responds, arguing that appellant's accomplice-corroboration challenge is barred. Relying upon McGehee v. State, 338 Ark. 152, 160-61, 992 S.W.2d 110, 114-15 (1999), the State argues that, in addition to making a specific directed-verdict motion under Ark. R. Crim. P. 33.1, appellant must also have the witness declared as an accomplice as a matter of law or the jury must be given accomplice instructions in order to preserve this particular challenge for appeal.

Arkansas Code Annotated § 16-89-111(e)(1) (1987) provides that a person cannot be convicted of a felony based upon the testimony of an accomplice, unless that testimony is "corroborated by other evidence tending to connect the defendant with the commission of the offense." Id. We have said that an appellant bears the burden of proving that a witness is an accomplice whose

testimony must be corroborated. *McGehee*, 338 Ark. 152, 160, 992 S.W.2d 110, 115. A defendant must either have the trial court declare a witness to be an accomplice as a matter of law or submit the issue to the jury for determination. *Id.* In *McGehee*, the trial court instructed the jury that one co-defendant was an accomplice to appellant's capital-murder charge, but appellant did not request that two other witnesses be declared as accomplices as a matter of law, nor did he request that their status be submitted to the jury for determination. *Id.* We held that the testimony of the one accomplice must be corroborated on the murder charge. *Id.* *See also Hogue v. State*, 323 Ark. 515, 915 S.W.2d 276 (1996) (concluding that Hogue preserved the issue of whether the trial court erred in declining to direct a verdict on insufficient corroborative evidence because there was a finding by the trial court that there was an accomplice).

Unlike the circumstances in *Hogue, supra*, there was never a finding of an accomplice in the present case. These circumstances are more akin to *McGehee* in that the testimony of Althea Berry can be considered because she was never declared an accomplice as a matter of law, nor was a jury instruction given on her status. At trial, Berry testified that she was also charged with first-degree murder, and the circuit court advised her during her testimony of her Fifth Amendment rights. Appellant later raised an accomplice-corroboration challenge during his motion for directed verdict, but he never requested that the circuit court declare Althea Berry an accomplice as a matter of law, nor did appellant ask that the circuit court give the jury an instruction on the question of whether Berry was an accomplice as a matter of fact. Thus, the State is correct in its position that appellant's accomplice-corroboration challenge is barred. Because Berry was not named as an accomplice, our accomplice-corroboration principles do not apply, and we consider her testimony in our review of the sufficiency of the evidence.

It is well settled that we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Jones v. State*, 357 Ark. 545, 182 S.W.3d 485 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion

and conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.*

We now review the sufficiency of the evidence, including Berry's testimony. A person commits first-degree murder if "[w]ith a purpose of causing the death of another person, he causes the death of another person[.]" Ark. Code Ann. § 5-10-102(a)(2). Here, there is sufficient evidence to establish appellant's purpose of causing the death of Brian Wake. Berry testified that she went to the river with appellant where they met the victim. After everyone left, appellant and Wake got into a "scuffle," and she saw appellant push Wake to the ground. Berry also saw an up-and-down movement of appellant's arm, and she saw appellant throw something in the water. When Berry left the scene with appellant, she saw Wake lying motionless on the ground.

Further, appellant confessed the murder to Jeff and Tina Clift. Both Jeff and Tina Clift testified that appellant confessed that he thought he killed someone at the river. Additionally, there was third-party testimony, which was provided by Cole Drye and Jason Allen, who placed appellant at the crime scene. When they finished hunting and returned to the river, they saw appellant "toe to toe" with the victim as if they were about to fight. Thus, based upon the foregoing testimony, we hold that there is sufficient evidence to support appellant's first-degree murder conviction.

For his second point on appeal, appellant argues that the circuit court erred in admitting into evidence State's Exhibit No. 29, a metal bar found in the river that was admitted during Detective Dudderar's testimony. Specifically, appellant contends that "[t]here was no trace evidence linking the pipe to the crime." In response, the State argues that appellant's evidentiary challenge is not preserved because appellant allegedly failed to timely object to the admissibility of the metal bar during Althea Berry's testimony or during Detective Dudderar's testimony. The State alternatively contends that the circuit court did not abuse its discretion in admitting the metal bar.

To preserve an issue for appeal, a defendant must object at the first opportunity. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000); *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000). Here, the evidence at issue is a metal bar that police found at the crime scene. During Althea Berry's testimony, to which the State alludes, she testified that after the victim was lying on the ground, she and

appellant tried to push-start the motorcycle, and appellant "threw something in the water." The State contends that appellant should have objected at that time. Appellant's counsel did object, stating, "She said she couldn't see what he was throwing." (R. 542-43) Berry never states that she saw a metal bar, and the basis for appellant's objection appears to be that the question was asked and answered.

However, appellant should have objected during Detective Dudderar's testimony at which State's Exhibit 28, a photo of the metal bar, was admitted without objection. The following collo-quy occurred at trial:

Q: I'd like to show you an exhibit which I've marked as State's Exhibit No. 28. Do you recognize this?

A: Yes, ma'am.

Q: What is that?

A: It's the [photograph of the]metal bar we found in a low creek off to the side of the river.

Q: Is that an accurate depiction of the location of where you found that metal bar?

A: Yes, ma'am.

PROSECUTOR: Your Honor, we would seek to admit State's Exhibit 28 into evidence.

THE COURT: Any objection?

DEFENSE COUNSEL: No objection.

THE COURT: It'll be received.

Here, State's Exhibit No. 28 depicts the same object as State's Exhibit 29, yet there was no objection at the time that State's Exhibit No. 28 was admitted. Thus, we conclude that appellant failed to raise an objection at the first opportunity. His failure to do so results in the objection not being preserved for appeal. *Hardman v. State*, 356 Ark. 7, 12, 144 S.W.3d 744, 747 (2004). For these reasons, we are precluded from reaching appellant's second point on appeal.

For his third point on appeal, appellant argues that the circuit court erred in denying appellant's motion for continuance. Specifically, appellant contends that he was prejudiced because he was unable to show that appellant's co-defendant, Althea Berry, had a prior misdemeanor conviction of striking her partner in the head with a hammer.

The State made a motion in limine to prohibit appellant from admitting two prior misdemeanor convictions to impeach Berry's testimony. Appellant's argument focuses on Berry's 2002 conviction. In its brief, the State points out that appellant failed to explain how a continuance would have served him, and that the circuit court properly excluded appellant's co-defendant's conviction.

The standard of review for alleged error resulting from denial of a continuance is abuse of discretion. *Robinson v. State*, 317 Ark. 407, 408, 878 S.W.2d 405, 406 (1994). Absent a showing of prejudice by the defendant, we will not reverse the decision of a trial court. *Id.* Here, appellant, with very little analysis in his brief, has not stated how a continuance or further research would have allowed him "to be properly prepared to meet these motions . . . [.]"

On the record before us, we cannot say that appellant was prejudiced by the denial of his motion for continuance. Appellant has failed to demonstrate in his brief how his lacking additional time to research the prior conviction would have prejudiced him. Absent a showing of prejudice, we conclude that the circuit court did not abuse its discretion in denying his motion. Therefore, we affirm on this point.

For his fourth point on appeal, appellant argues that the circuit court erred in suppressing Althea Berry's misdemeanor conviction for domestic battery. Specifically, appellant contends that Berry's 2002 misdemeanor domestic-battery conviction, which involved striking her domestic partner with a hammer, goes to appellant's defense that he did not strike Brian Wake. Appellant further asserts that the misdemeanor conviction is relevant and admissible as "reverse 404(b)" because of the victim's blunt-force trauma to the head in this case.

In response, the State argues that the Arkansas Rules of Evidence 607, 608, and 609 permit impeachment for credibility, *see* Rule 607, but proof of specific instances of conduct are

impermissible by extrinsic evidence, except as to felony convictions not more than ten years old. *See* Rules 608 and 609.

It is recognized that evidence such as other parties' threats to kill or offer of payment to someone else to commit murder are relevant to prove motive on the part of someone other than the defendant. *Larimore v. State,* 317 Ark. 111, 877 S.W.2d 570 (1994). Such evidence is sometimes called "reverse 404(b)," as it is evidence of other crimes, wrongs, or acts by a party other than the defendant which may not be admitted to show that the party acted in conformity with a known character trait, but which may be admitted for other purposes, such as to show motive, opportunity, intent, or identification of that other party, thus tending to negate the guilt of the defendant. *Id.* (citing *United States v. Stevens,* 935 F.2d 1380, 401-02 (3d Cir.1991)).

In the present case, the circuit court ruled:

> The rule which allows the impeachment of a witness states that Defense may go into — may inquire of specific incidences, but only as to show the Defendant's propensity for truthfulness or untruthfulness. I don't think that this evidence would go to either one. I think it's conceivable it could become relevant under some circumstances, but you would have to be able to make a very strong case that Ms. Berry was the assailant in this case, and she would probably have to deny that she's the kind of person that would do something like that. And without such evidence I just can't see that it's relevant. So, I'm going to grant the State's motion on that one.
>
> · · · ·
>
> Without evidence more [sic] — it'd have to be stronger than that. There would have to be witness testimony or — and I don't know about your client. I don't know whether he's going to testify or not, but there would have to at least be something stronger than what's been presented to this point to make it relevant. It has to have independent relevance for the court to allow it in. You just can't use it just to show that she's a bad person. I think in this situation that it would be more for the purpose of showing that she's a bad person, not showing that she's truthful or untruthful. You can't just go on a fishing expedition and try to blame something on somebody else without having some proof of that.

We agree with the circuit court's reasoning. Althea Berry's 2002 misdemeanor conviction is not admissible for the following reasons. First, under Ark. R. Evid. 609, Berry's 2002

misdemeanor conviction for domestic battery could not have been admitted. Rule 609 allows for the admissibility of felony convictions to impeach the witness, if there was a question of dishonesty. Here, the defense sought to admit the evidence to prove a similar act, rather than impeach Berry's character, and therefore, it is inadmissible.

 Second, the conviction cannot be admitted under any "reverse 404(b)" principles because the question of whether Berry was the perpetrator of the crime was not the issue in appellant's trial, but rather, the State sought to prove that appellant was guilty of the crime. Appellant and Berry were together on the night of the murder, but appellant never made a defense that Berry was the perpetrator. For these reasons, we hold that the circuit court properly excluded Berry's prior domestic-battery conviction.

For his fifth point on appeal, appellant argues that the circuit court erred in allowing the prosecution to "educate the jury" in voir dire. Specifically, appellant contends that "the State was allowed into the purview of the Judge" by quoting the law to the jury. Appellant asserts that he was prejudiced by the circuit court's allowing the State to do so.

The State responds, arguing that the circuit court did not abuse its discretion by overruling appellant's challenge to the State's conduct of voir dire. The State contends that appellant did not request any relief at the circuit-court level, and thus, should be precluded from relief on appeal.

The extent and scope of voir dire is left to the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). The judge's restriction of that examination will not be reversed on appeal unless that discretion is clearly abused. *Id.* Abuse of discretion occurs when the circuit judge acts arbitrarily or groundlessly. *Isom v. State*, 356 Ark. 156, 171-72, 148 S.W.3d 257, 267-68 (2004).

In the present case, the following colloquy occurred during voir dire:

> PROSECUTOR: Okay. Those are exactly the types of things that we expect you to do when you evaluate the witness' credibility from the witness stand.

> DEFENSE COUNSEL: Your Honor, I'm going to object. It's not for her to tell the jury how to evaluate the

witness' credibility. This is to determine if the witnesses have the qualifications to sit as a — I mean the jurors to have the qualifications to sit as a juror, not for her to explain to them how they do their job.

THE COURT: Okay. Your objection's noted. Proceed.

PROSECUTOR: Thank you, Your Honor . . . [.]

. . . .

PROSECUTOR: . . . The law in Arkansas states that intoxication —

DEFENSE COUNSEL: Your Honor, I'm going to object to her quoting what the law in Arkansas states. The judge is the sole arbiter of what the law is.

THE COURT: Okay. This is voir dire. I'll allow some education on the part of either side that wishes to educate the jury. Go ahead.

Here, the circuit court gave both the prosecution and the defense the opportunity to "educate the jury." Appellant did not seek particular relief, such as an admonition to the jury, when the prosecutor educated the jury on the law in Arkansas. Moreover, both parties agreed that the jury panel was satisfactory at the conclusion of voir dire. Based upon these circumstances, we therefore hold that the circuit court did not abuse its discretion, and we affirm on this point.

For his sixth point on appeal, appellant argues that the circuit court abused its discretion in allowing improper prosecutorial comments during the sentencing phase. Specifically, appellant contends that he was prejudiced by the circuit court's allowing the prosecutor to relay to the jury a personal story of the death of his father. Appellant asserts that he was prejudiced by the prosecutor's crying during closing argument.

In response, the State argues that the circuit court did not abuse its discretion by allowing the prosecutor to "speak from a recent, personal experience about the loss of a family member by way of analogy. . . [.]" The State contends that it is unclear from the record whether the prosecutor cried during closing argument, but that any display of emotion by relaying an analogy to the jury is permissible.

The trial court clearly has broad discretion in controlling trial counsel in closing arguments, and we will not disturb a trial court's ruling regarding an objection during closing argument absent a manifest abuse of discretion. *Lee v. State*, 340 Ark. 504, 516, 11 S.W.3d 553, 560 (2000). A reversal of a judgment due to remarks made by counsel during closing arguments is rare and requires that counsel make an appeal to the jurors' passions and emotions. *Mills v. State,* 322 Ark. 647, 910 S.W.2d 682 (1995).

In the present case, the following colloquy occurred:

> PROSECUTOR: This is harder than I thought it would be. Having someone in prison is not the same as losing a loved one. There are problems with that, but it is not the same. I lost my dad three months ago, and I would give everything —
>
> DEFENSE COUNSEL: Your Honor, I'm going to object. We're going to object to his personal stories here, Your Honor. That's not part of the sentencing process.
>
> PROSECUTOR: Can I just — Your Honor, this is closing argument.
>
> THE COURT: This is argument. The attorneys of either side is allowed to —
>
> DEFENSE COUNSEL: Your Honor, but the only possible thing they can do is prejudice the jury even more against my client in closing arguments and that's not the purpose of closing argument. He can argue for sentence, but personal stories of loss are not a part of that.
>
> THE COURT: I will allow you to draw analogies if you wish, Mr. Crain, in your closing arguments.
>
> PROSECUTOR: I would give everything I own to be able to see my dad on the weekends. Just to keep this family (inaudible) by Brian Wake. Life is a just sentence. I won't even say anymore.

During the State's rebuttal closing argument, the prosecutor stated, "I apologize if I've gotten a little emotional. I (inaudible) of keeping it in."

It is unclear from the record whether the prosecutor cried during his closing argument. Nevertheless, the circuit court gave both sides an opportunity to present their arguments by way

of analogy, and the jury had already been instructed by the judge that "closing arguments of the attorneys are not evidence, but are made only to help you in understanding the evidence and applicable law." For these reasons, we hold that the circuit court did not abuse its discretion in its ruling.

Pursuant to Ark. Sup. Ct. R. 4-3(h), we have reviewed the record and have determined that there are no errors with respect to rulings on objections or motions prejudicial to the defendant not discussed above. *Gardner v. State*, 364 Ark. 506, 221 S.W.3d 339 (2006).

Affirmed.