2011 Ark. App. 576

**Cameka SULLIVAN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–1320.**

Court of Appeals of Arkansas.

Sept. 28, 2011.

J. Brent Standridge, Benton, for the appellant.

Atty. Gen., by: Rachel Hurst Kemp, Little Rock, for the appellee.

WAYMOND M. BROWN, Judge.

₁Appellant Cameka Sullivan was found guilty of permitting the abuse of a minor and hindering apprehension or conviction by a Saline County jury. She received an aggregate of eighteen years' imprisonment. Sullivan was also ordered to register as a sex offender.[1] She argues on appeal that: (1) the evidence is insufficient to support her convictions; (2) the trial court erred in denying her motion to dismiss the charges for lack of a speedy trial; (3) the trial ₂court erred in allowing the State to bolster the credibility of her daughter, Z.B.; (4) the trial court erred in allowing Sonya Yenner to give irrelevant testimony; (5) the trial court erred in allowing witnesses to give speculative and irrelevant testimony; (6) the trial court erred in requiring her to register as a sex offender. We affirm.

On July 8, 2005, Sullivan presented to Arkansas Children's Hospital (ACH) with her then twenty-three-month-old daughter. The child was unresponsive and suffered from severe brain injury. Sullivan gave the hospital a history that the child had fallen from a bunk bed, which was about five feet high, and sustained the injury. According to Sullivan, the child cried for a while but otherwise seemed fine. Sullivan stated that at some point the child became unresponsive so she decided to bring the child to the hospital. X-rays of the child's head showed that she suffered extensive brain injury that could not have been caused by a fall from a bunk bed. The child's injury resembled injuries found in "shaken" babies. Sullivan was arrested on July 10, 2005, in connection with the child's injury. She was initially charged with first-degree battery by information filed on August 26, 2005. Sullivan was eventually charged by information with the charges she now appeals. Sullivan's jury trial took place June 22–23, 2010.[2] She was found guilty of the charges against her and sentenced to the Arkansas Department of Correction for eighteen years. She was

---

1. The original judgment and commitment order was filed on June 28, 2010, and did not include the requirement that Sullivan register as a sex offender. She timely filed a notice of appeal on July 28, 2010. The court filed an amended judgment and commitment order on September 2, 2010, adding sex offender registration. No amended notice of appeal was filed. Rule 2(b)(1) of the Arkansas Rules of Appellate Procedure–Criminal states that a "notice of appeal filed after the trial court announces a decision but before the entry of the judgment or order shall be treated as filed on the date after the judgment or order is entered." Accordingly, we apply the rule to this case and deem the notice of appeal as filed on the day after the amended judgment and commitment order was entered. *See* *Stone v. State*, 371 Ark. 78, 263 S.W.3d 553 (2007).

2. Sullivan's boyfriend, Victor Lyons, was subsequently arrested and convicted of first-degree battery, in connection with the child's injury. Lyons was sentenced to twenty years' imprisonment. His conviction was affirmed on appeal. *Lyons v. State*, No. CACR07–946, 2008 WL 2192140 (Ark.App. May 28, 2008) (unpublished).

required to register as a sex offender due to the nature of her conviction. This appeal follows.

▮▮▮ ⌊₃For her first point, Sullivan argues that the court erred in denying her motion for directed verdict because the evidence was insufficient to support her convictions. An argument contesting the denial of a directed verdict is a challenge to the sufficiency of the evidence and, as such, must be addressed before discussion of trial error.[3] The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial.[4] Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture.[5] On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict.[6]

▮▮ Sullivan was charged with violating Arkansas Code Annotated § 5–27–221, which in 2005, provided in pertinent part:

(a)(1) A person commits the offense of permitting the abuse of a child if, being a parent, . . . he or she recklessly fails to take action to prevent the abuse of a child who is less than eleven (11) years old.

(2) It is a defense to a prosecution for the offense of permitting abuse of a child if the parent, . . . takes immediate steps to end the abuse of the child, including prompt notification of medical or law enforcement authorities, upon first knowing or having a good reason to know that abuse has occurred.

⌊₄(b) Permitting the abuse of a child is a Class B felony if the abuse of the child consisted of sexual intercourse or deviate sexual activity, or caused serious physical injury or death to the child.

The evidence adduced at trial showed that, when the child presented to ACH with brain injury, she also had signs of older injuries. One injury in particular on the top of the child's left hand caused Dr. Marci Esquivel[7] concerns. Dr. Esquivel testified that the injury appeared older than the brain injury but that it still had swelling and the lacerations were deep in the tissue. According to Dr. Esquivel, the left-hand injury would have been painful for the child. Dr. Esquivel testified, over appellant's objection, that the child's hand injury "would have been immediately apparent to a care giver." She noted that the child's right hand also showed signs of injury, but not as severe as the left hand. According to Dr. Esquivel, other older injuries visible on the child's body included: (1) a scabbed lesion on her forehead with no swelling, (2) a one-and-a-half inch scabbed lesion in the middle of her chest, (3) two smaller scabbed lesions around her breasts, (4) a small lesion around her belly button, (5) a scabbed lesion "right around her genital area", (6) three dark scars on the outside of her right thigh, (7) a superficial scratch below her right knee, (8) a lesion inside her left thigh that looked like a blister or just broken skin, (9) linear or straight superficial scratches on her back, (10) light-colored scars on her buttock indicating "that she had had some kind of injury there in the past, but when it healed, it left the light skin."

---

**3.** *Harris v. State,* 284 Ark. 247, 681 S.W.2d 334 (1984).

**4.** *Price v. State,* 365 Ark. 25, 223 S.W.3d 817 (2006).

**5.** *Id.*

**6.** *Id.*

**7.** A general pediatrician at ACH who is also part of a team for children at risk that specializes in the care of abused children.

Sullivan's oldest daughter, Z.B., testified that Lyons "treated [her sister] badly" and that she told Sullivan about the different incidents involving Lyons and the child, including: (1) when Lyons shoved a fork down the child's throat, (2) when Lyons pulled the child's hands underneath the door causing them to bleed, (3) when Lyons "beat" the child's head against the wall. According to Z.B., her mother did not believe that Lyons was doing anything to hurt the child. Z.B. testified that Sullivan asked her to lie about what caused the child's severe brain injury. Z.B. also stated that there was at least one time when she was six-years old that her mother left her and her two younger sisters home alone for a couple of days while she went to Texas with Lyons.

Here, the evidence was sufficient to support Sullivan's conviction for permitting the abuse of her twenty-three-month-old daughter. As a defense, Sullivan argues that, once she realized something was wrong with the child, she immediately acted by taking the child for medical attention. This argument is without merit. The evidence shows that this was not an isolated incident. Additionally, Z.B. testified that she told her mother of earlier instances of abuse and Sullivan did not believe her. Accordingly, we affirm.

■ Sullivan was also charged with violating Arkansas Code Annotated § 5–54–105, which in 2005, stated in pertinent part:

(a) A person commits an offense under this section if, with purpose to hinder the apprehension, prosecution, conviction, or punishment of another for an offense, he:

(6) Volunteers false information to a law enforcement officer; or

(7) Purposefully lies or attempts to purposefully provide erroneous information, . . . which he knows to be false to a certified law enforcement officer that would distract from the true course of the investigation or inhibit the logical or orderly progress of the investigation.

Evidence shows that Sullivan consistently told police officers that her child's injury was caused by falling from off the top of the bunk beds. Sullivan offered this account even after doctors informed her that there was no way the fall would result in such a severe injury. This history was given to the police at a time when Sullivan knew what had actually happened. Evidence supports this conviction. Therefore, we affirm.

■ For her second point, Sullivan argues that the trial court erred by denying her motion to dismiss for lack of a speedy trial. Any defendant charged in circuit court shall be entitled to have the charge dismissed with an absolute bar to prosecution if not brought to trial within twelve months of the date he was arrested or the date the charges were filed, whichever is earlier, excluding any periods of necessary delay as authorized by Rule 28.3.[8] Once a defendant presents a prima facie case of a speedy-trial violation, the State has the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified.[9] A defendant is not required to bring himself to trial or "bang on the courthouse door" to preserve his right to a speedy trial; the burden is on the courts and the prosecutor to see that trials are held in a timely fashion.[10] Under Rule 28.3, excluded peri-

**8.** Ark. R.Crim. P. 28.1, 28.2; *Killian v. State*, 96 Ark.App. 92, 238 S.W.3d 629 (2006).

**9.** *Arnold v. State*, 2011 Ark. App. 452, 2011 WL 2473118.

**10.** *Id.*

ods include delays resulting from: (1) other proceedings concerning the defendant, (2) a continuance granted at the request of the defendant or his counsel, (3) the absence or unavailability of the defendant (defendant is absent when his whereabouts are unknown; he is unavailable when his whereabouts are known but his presence for the trial cannot be obtained), (4) any other periods for good cause.

Here, Sullivan was arrested on July 10, 2005. She was not brought to trial until June 22, 2010. Sullivan concedes that there were excludable periods for purposes of calculating the time for speedy trial. Particularly, Sullivan concedes that the time period of April 6, 2006, to November 22, 2006, was properly excluded as was the time period from November 22, 2006, to May 15, 2007. However, she questions whether the time periods from May 15, 2007, to January 20, 2009, were properly excluded.

There were approximately 270 days between when Sullivan was initially arrested and when her first court date was set. These days were not excluded, therefore, Sullivan had ninety-five days in which to be brought to trial. Sullivan questions the time period from May 15, 2007, to December 11, 2007. At Sullivan's hearing on her motion to dismiss, Paul Lancaster, an attorney who represented Sullivan during the contested time period, testified that he asked the court for a continuance on Sullivan's behalf because she had been injured in a car wreck earlier that day. The oral motion was granted and the court mailed a letter, at a later date, setting the trial for December 11, 2007. Under the clear language of Rule 28.3, this time was properly excluded. The next period of time in question is between December 11, 2007, and April 8, 2008. Sullivan did not show up for her trial on December 11, 2007, and a failure-to-appear warrant was issued. She

was arrested in North Little Rock on the warrant on April 8, 2008. Two days later, she was extradited to Texas to serve time on a warrant. Sullivan argues that this time should not be excluded because there was no evidence that anyone tried to serve the warrant. The court rejected this argument and relied on the fact that the warrant was served on Sullivan on April 8, 2008, when she was arrested on the warrant. Lancaster testified that once he received notice that the trial was scheduled for December 11, 2007, he had his secretary send Sullivan a letter informing her of the new court date. The letter was mailed to the address then on file; however, it was returned to them. He conceded that he did not know Sullivan's whereabouts at the time of her trial when she failed to appear. The court relied on this testimony to support the State's contention that this time should be excluded due to Sullivan's absence. This time was properly excluded under Rule 28.3. The final period of time contested by Sullivan is April 8, 2008, to January 20, 2009. Sullivan was picked up in Pulaski County on April 8, 2008. She was sent to Texas on April 10, 2008, where she remained until her release and return to Arkansas on January 20, 2009. The court correctly excluded this period of time because Sullivan was considered unavailable under the language of Rule 28.3. Sullivan's new court date was set for February 24, 2009; Sullivan sought and was granted a continuance on February 19, 2009. The time period from January 20, 2009, to February 19, 2009, is not excluded. Thus, after these twenty-one days are counted, there were still seventy-four days left for purposes of speedy trial. Sullivan concedes that the time period from the February 2009 continuance to the date of trial did not count for speedy-trial purposes. Based on the evidence, we hold that the trial court did not err in

denying Sullivan's motion to dismiss for lack of speedy trial.

 Sullivan's third point on appeal is that the court erred in permitting the State to bolster the testimony of Z.B. As a general rule, the credibility of a witness cannot be bolstered until that witness has been impeached. *See Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). Here, after cross-examination, the State read portions of Z.B.'s testimony found in the transcript from Lyons's trial and asked her if the portions were read correctly. This form of questioning took place after the defense had Z.B. look at the transcript and refresh her memory in an effort to attack her credibility. Under these circumstances, the court did not err by permitting the State to bolster Z.B.'s testimony. Even if it was error, it was harmless. This court has said that even when a circuit court errs in admitting evidence, we will affirm the conviction and deem the error harmless if there is overwhelming evidence of guilt and the error is slight.[11] To determine if the error is slight, we look to see whether the defendant was prejudiced by the erroneously admitted evidence.[12] Prejudice is not presumed, and this court will not reverse a conviction absent a showing of prejudice by the defendant.[13] When the erroneously admitted evidence is merely cumulative, there is no prejudice, and a conviction will not be reversed for harmless error in the admission of evidence.[14] The testimony here was cumulative, and the evidence of Sullivan's guilt was overwhelming. Accordingly, we affirm.

 For her fourth point of appeal, Sullivan argues that the court erred in allowing Sonya Yenner to give irrelevant testimony. Yenner testified that she used to be Sullivan's neighbor and that, on one occasion, she saw Z.B. at the bus stop on a day that school was not in session. She testified, over Sullivan's objection, that Z.B. told her that Sullivan was at home asleep. Yenner stated that she walked Z.B. home and knocked on the door approximately fifteen minutes before Sullivan answered the door. She further testified about an incident in which she had to get security to go to Sullivan's home because the children were there alone.[15] Yenner said that Sullivan arrived home shortly after security went to her house and stated that she had been down the street because her boyfriend's car had broken down. Sullivan argues that this testimony was irrelevant and prejudicial. Arkansas Rule of Evidence 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Absent a showing of manifest abuse of discretion, the trial court's determination of whether relevant evidence's probative value is substantially outweighed by the danger of unfair prejudice will not be reversed on appeal.[16] As stated above, the

11. *Rodriguez v. State*, 372 Ark. 335, 276 S.W.3d 208 (2008).

12. *Id.*

13. *Id.*

14. *Id.*

15. The two oldest children were outside playing in the rain with nothing on but underwear and t-shirts. She stated that she did not see any adults at the home and when she went to the door she could see the infant asleep in a swing.

16. *Bohanan v. State*, 324 Ark. 158, 919 S.W.2d 198 (1996).

evidence of Sullivan's guilt was overwhelming. Accordingly, she is unable to show any prejudice resulting from this testimony. We affirm.

 In her fifth point, Sullivan argues that the court erred in allowing witnesses to give speculative and irrelevant testimony. She specifically argues that Dr. Esquivel should not have been allowed to testify that the injury on the child's hand would have been immediately apparent to a care giver. She objected at trial, stating that the testimony was not a subject of expert opinion. The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse the court's decision regarding the admission of evidence absent a manifest abuse of discretion.[17] The general test for admissibility of expert testimony is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue.[18] An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier of fact to understand and draw its own conclusions.[19] Here, although the jury could draw its own conclusions based on the testimony and pictures introduced during the trial, we hold that no error resulted from Dr. Esquivel's testimony. Even if it was error for the court to allow in Dr. Esquivel's testimony, it was harmless because Sullivan's guilt was overwhelming. |₁₂Sullivan also contends that the court erred in allowing her mother to testify that if she had seen the injuries on the child, she would have gotten to the bottom of it. We affirm this point for the same reason as stated above: the evidence of guilt was overwhelming.

 Finally, Sullivan argues the court erred by requiring her to register as a sex offender. This argument appears to have two prongs (1) the court lacked jurisdiction to add the requirement and (2) the court was not authorized by law to impose that requirement. A trial court loses jurisdiction over a matter when the appeal transcript is lodged in the appellate court.[20] Here, the order was amended on September 2, 2010. The appeal transcript was not lodged until December 27, 2010. Therefore, the court had jurisdiction to add the requirement to the order. The second part of this argument involves whether the court acted outside of its authority when it added the sex offender registration requirement to the order. Permitting the abuse of a minor is specifically listed under the definition of "sex offense." Therefore, the trial court had the authority to order Sullivan to register as a sex offender, because the crime for which she was convicted was classified as a sexual offense. Accordingly, we hold that the trial court did not err.

Affirmed.

VAUGHT, C.J., and HOOFMAN, J., agree.

---

**17.** *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006).

**18.** *Id.*

**19.** *Id.*

**20.** *Sherman v. State*, 326 Ark. 153, 931 S.W.2d 417 (1996).