

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–15–907

| | |
|---|---|
| BOBBY WAYNE AUSTIN | **Opinion Delivered** APRIL 6, 2016 |
| APPELLANT | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. CR–2014-123] |
| V. | |
| STATE OF ARKANSAS | HONORABLE DAVID G. HENRY, JUDGE |
| APPELLEE | REVERSED AND REMANDED |

## DAVID M. GLOVER, Judge

Bobby Austin was convicted of second-degree battery by an Arkansas County jury, sentenced as a habitual offender to fifteen years in the Arkansas Department of Correction, and fined $10,000. Austin now appeals, arguing that the trial court erred in allowing the State to introduce two misdemeanor convictions not involving dishonesty or false statement for impeachment purposes during his testimony. We find merit in Austin's argument and reverse and remand.

*Facts*

The pertinent facts of this case hinge on different versions of the incident as told by Austin and Adam Bevell, the victim. On November 4, 2014, Austin and Bevell were both in a park in Humphrey, Arkansas. Bevell testified he was picking up pecans when Austin and two other men approached him; he "knew of" Austin but the two men were not friends.

According to Bevell, Austin walked up to Bevell, hit him on the right side of his face with a metal object that was "wrapped up" in Austin's hand, did not say anything to him after he had hit him, and then handed the object in his hand to Cole Winfrey, one of the other men with Austin. Bevell explained he had to undergo surgery on his eye and his jaw after Austin had hit him; he still has no feeling on that side of his face; and he still has pain from the incident. Bevell denied he had agreed to give Austin a ride, asserting that he did not "run" with that crowd. Bevell said he would not have given Austin and Winfrey a ride if they had asked him for one. He stated he had no idea why Austin attacked him.

Austin testified on his own behalf, stating that he had known Bevell all his life; they had always been friends; on the day of the incident, Bevell had agreed to take Austin to Stuttgart after Bevell took his mother home; and Bevell had given him rides on other occasions. Austin said when Bevell returned to the park, Cole Winfrey and two black guys were also at the park. According to Austin, he told Bevell he was going to get in the car; he then got into the front passenger-side seat of Bevell's car; he saw Cole Winfrey bullying Bevell about letting him have a ride, too; Bevell was not okay with giving Winfrey a ride and pulled a knife out and moved toward the car; Bevell opened the car door still holding the knife; Bevell told Austin that he had to get out; and Bevell grabbed Austin. Austin testified that Bevell did not calmly ask him to get out; rather he grabbed him and told him he needed to get out immediately. Austin said he got scared and reacted by hitting Bevell, but denied that he had anything in his hand when he hit Bevell. Austin stated he hit Bevell because he was afraid for his life and was afraid Bevell would stab him. No other person who witnessed

the altercation testified at trial.

The issue on appeal concerns the State's questioning of Austin on cross-examination regarding previous misdemeanor convictions. During Austin's testimony on direct examination in his case-in-chief, the following colloquy occurred:

| | |
|---|---|
| DEFENSE COUNSEL: | Bobby, something that—something that I told this jury at the very first part of the trial, I told them that you have been in some trouble before, haven't you? |
| APPELLANT: | Yes, sir. |
| DEFENSE COUNSEL: | You've—you've got some convictions on your record, don't you? |
| APPELLANT: | Yes, sir. |
| DEFENSE COUNSEL: | Been to the Department of Correction? |
| APPELLANT: | Yes, sir. |
| DEFENSE COUNSEL: | At the time that this happened, were you on parole or probation, anything like that? |
| APPELLANT: | No, sir.  I've been doing really good, actually. |

During the State's cross-examination of Austin, the following colloquy occurred:

| | |
|---|---|
| PROSECUTOR: | You have been going to the penitentiary out of this court and other courts since you were eighteen years old, haven't you, Mr. Austin? |
| APPELLANT: | Yes, sir. |
| PROSECUTOR: | You know how many felony convictions you have? |
| APPELLANT: | Yes, sir. |

. . . .

SLIP OPINION

PROSECUTOR: Mr. Austin, I believe [INAUDIBLE] [Defense Counsel] you had been doing good. He asked if you were on parole or probation or anything, and you said you had been doing good, right?

APPELLANT: Yes, sir.

PROSECUTOR: What is your definition of doing good?

APPELLANT: Uh, just not hanging around the type of people, you know what I mean, like I used to when I was eighteen.

. . . .

PROSECUTOR: You were arrested in Stuttgart, in December of '13, for possession of controlled substance and disorderly conduct, weren't you?

APPELLANT: [NO VERBAL RESPONSE]

PROSECUTOR: Plead guilty—

DEFENSE COUNSEL: Your Honor, may we approach again?

[Following proceedings were held at the bench out of the sound of the jury]

DEFENSE COUNSEL: Your Honor, the Prosecutor knows full well that he can't impeach with misdemeanor drug convictions—

PROSECUTOR: Judge, he said he was doing good. I didn't—I didn't bring it up. He said, "I was doing good."

TRIAL COURT: He—this would be an impeachment of his—of his statement that he was doing well, and apparently [INAUDIBLE]. I am going to allow the question.

PROSECUTOR: Thank you, Your Honor.

PROSECUTOR: Is that correct, Mr. Austin, that you were arrested in December, in Stuttgart, less than a year before this?



APPELLANT:                     Uh . . . I would have to—I would have to check on the paperwork.

*Standard of Review*

Austin argues the trial court erred in allowing the State to question him about his misdemeanor convictions. Evidentiary rulings are reviewed under an abuse-of-discretion standard. *Dickey v. State*, 2016 Ark. 66, ___ S.W.3d ___. Arkansas appellate courts do not reverse a trial court's evidentiary rulings absent a manifest abuse of discretion and a showing of prejudice. *Id.*

*Discussion*

Arkansas Rule of Evidence 609(a) addresses impeachment by evidence of prior criminal convictions:

> **General Rule**. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one [1] year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or a witness, or (2) involved dishonesty or false statement, regardless of the punishment.

Austin's misdemeanor convictions are not admissible under subsection one, and no one asserts that his misdemeanor convictions (possession of a controlled substance and disorderly conduct) are crimes involving dishonesty or false statement allowed under subsection two.

Nevertheless, the State argues Austin's misdemeanor convictions are admissible because Austin had "opened the door" by stating he had been "doing really good." By giving direct evidence of good character, a party opens the door to rebuttal evidence showing bad character. *McFadden v. State*, 290 Ark. 177, 717 S.W.2d 812 (1986). The State correctly

argues, citing *Smith v. State*, 316 Ark. 407, 872 S.W.2d 843 (1994), that the Arkansas Rules of Evidence do not provide a rule on impeachment by contradiction. While a witness cannot be impeached by extrinsic evidence on collateral matters raised on cross-examination, that limitation is not applicable to answers given on direct examination. *Id*. When a witness testifies on direct examination that he has not committed collateral acts of misconduct, he opens the door for impeachment by contradiction, and such testimony may be contradicted by extrinsic evidence. *Id*.

The State argues this instance is analogous to *Smith*. We cannot agree. Here, there was no contradiction in Austin's testimony that would allow the State to impeach him with his misdemeanor convictions. When asked if he was on parole or probation *at the time the incident occurred*, Austin answered in the negative, stating that he had been "doing really good, actually." The time of the incident was November 4, 2014. Austin's misdemeanor convictions were in December 2013, which were not at the time the incident occurred. Therefore, his misdemeanor convictions almost a year prior to the incident in question do not contradict that statement. Austin did not open the door to allow the State to impeach his credibility by contradiction; thus, the misdemeanor convictions were not admissible, and we hold that the trial court abused its discretion in allowing the convictions to be admitted.

The State further argues that, even if it was error to question Austin about his prior misdemeanor convictions pursuant to Rule 609, the error was harmless. We disagree. When the evidence of guilt is overwhelming and the error is slight, Arkansas appellate courts can declare that the error was harmless and affirm the conviction. *Gillean v. State*, 2015 Ark. App.

698, 478 S.W.3d 255. With regard to the first prong—whether the evidence was overwhelming—it cannot be said there was overwhelming evidence because this case turned solely on the credibility of witnesses. Bevell testified Austin attacked him using a metal object "wrapped up" in his hand without any provocation from Bevell. Austin, in direct contrast, testified Bevell had told him he could have a ride to Stuttgart after Bevell took his mother home; Bevell pulled a knife after engaging in an altercation with Cole Winfrey; Bevell opened the car door still holding the knife and grabbed Austin; and Austin, fearing for his life, then hit Bevell in the face. No other person who witnessed the altercation testified at trial. We cannot say that the error was slight because the entire case turned on the credibility of the witnesses, and allowing improper misdemeanor convictions to be admitted into evidence was clearly prejudicial to Austin's credibility. When evidence of the commission of a crime by the defendant is produced, it is highly prejudicial to the accused, whether it is evidence he committed the crime charged or some other crime. *McFadden, supra.*

Reversed and remanded.

KINARD and HOOFMAN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.