WAYMOND M. BROWN, Judge
Appellant appeals from his probation revocation in case number 60CR-15-396, a matter which was heard simultaneously with his bench trial on the charge of battery in the second degree of which he was convicted in case number 60CR-16-3128. On appeal, appellant argues that the circuit court (1) abused its discretion in case number 60CR-16-3128 in ruling that his counsel "opened the door" on cross-examination of appellee's witness such that the witness was allowed to testify in the form of hearsay; and (2) erred in case number 60CR-15-396 in granting appellee's probation-revocation petition because of the circuit court's erroneous "opened the door" ruling in case number 60CR-16-3128. We affirm and remand to correct the sentencing order.
On February 5, 2015, appellant was charged with felony hot-check writing as a habitual offender in case number 60CR-15-396. Appellant signed a waiver of jury trial on October 20, 2015; the waiver advised that he could receive a sentence of three to thirty years' imprisonment and a fine of up to $10,000. On April 18, 2016, appellant signed a plea statement pleading guilty to misdemeanor hot check writing for which he was advised that he could be sentenced up to 365 days in prison and a fine of up to $2,500. He was sentenced to twelve months' probation and ordered to pay $3,965 in restitution to the victim, in addition to court costs and fees. A sentencing order reflecting the same was entered on April 26, 2016.
Appellee filed a petition to revoke appellant's probation in case number 60CR-15-396 on August 17, 2016, alleging that appellant had violated the terms of his probation in the following ways:
[I]n that on July 29th he was arrested in Lonoke County and charged with Maintaining a Drug Premises, Possession of Controlled Substance with Purpose, Possession of Drug Paraphernalia, Theft by Receiving, and Possession of Firearm by Certain Person, failed to pay restitutions (Owes $3,965.00), Tested positive for THC Marijuana and Amphetamines on 06/20/2016, failed to pay court cost and fines (owes $410.00), failed to pay supervision fees (owes $75.00). The above violations occurred after she [sic] was put on probation.[1]
A felony information charging appellant with battery in the second degree as a habitual offender in case number 60CR-16-3128 was filed on August 31, 2016. Appellant waived his right to trial by jury *251 on December 12, 2016; the waiver advised that he could receive a sentence of up to six years' imprisonment and a fine of up to $10,000.
The parties agreed to hear appellant's revocation proceeding in case number 60CR-15-396 simultaneously with his bench trial in case number 60CR-16-3128; the matter was disposed of on February 16, 2017. Appellant was sentenced to five years imprisonment in the Arkansas Department of Correction in case number 60CR-16-3128. He was sentenced to one year in the Pulaski County jail in 60CR-15-396. The sentences from each case were to run concurrently with one another. Separate sentencing orders in each case were entered on March 30, 2017.[2] This timely appeal followed.
Evidentiary rulings are reviewed under an abuse-of-discretion standard.[3] Arkansas appellate courts do not reverse a trial court's evidentiary rulings absent a manifest abuse of discretion and a showing of prejudice.[4]
Appellant's first argument is that the circuit court abused its discretion in case number 60CR-16-3128 in ruling that his counsel "opened the door" on cross-examination of appellee's witness such that the witness was allowed to testify in the form of hearsay. We do not agree.
Jeff Hooker, the victim, testified that "[w]here [appellant] hit me was-it happened so fast. Certainly the face, bloodied my nose, cracked my ribs. I do not know whether the ribs being cracked were from being punched[.]" Appellant objected. The following colloquy took place:
DEFENSE COUNSEL: Your Honor, I believe this is a testimony from a lay witness. He's trying to testify as an expert. There is no testimony from a doctor today, or there has been no testimony from a doctor saying that he's had a cracked rib. I think he's trying to testify as an expert, and they haven't laid the foundation for that.
DEPUTY PROSECUTING ATTORNEY: Your Honor, he is testifying to the injuries that he experienced, that he was treated for. He responded to a medical facility. He was treated by a doctor. I think he has first-hand knowledge as to what happened to his body.
THE COURT: Lay a foundation.
DEPUTY PROSECUTING ATTORNEY: Okay.
Immediately following this discussion, appellee shifted its questioning from the injuries Hooker suffered to the security measures in his place of business and the videotape of the incident. When Hooker was later questioned again regarding his injuries, he stated only that appellant had bloodied his nose before appellant objected to Hooker testifying to any injuries that involved a diagnosis from a doctor. Appellee noted that officers had already testified to how victim's face appeared when they encountered him and argued that "[s]urely if a lay person can notice what they saw on his face, [Hooker] can testify to what he saw on his face." The circuit court allowed Hooker to testify to what he saw. Hooker then testified as follows:
*252 Physically, what I saw on my person as a result of [appellant] hitting me was getting punched in the face several times and then punched in the ribs. Physically, what I saw on my face that took place because of him punching me [was] well, it bloodied my nose and then I had a bruise on my, on my cheek. Here on the side here where there was a glancing, glancing blow, and then bruised, bruising on, of my ribs.
I didn't go to the doctor that day. I went to the doctor at a later date. They x-rayed me.
Appellee then asked Hooker if he was told about his injuries, and appellant objected, asserting that such testimony would be hearsay. Appellee argued that such testimony would be within an exception to the rule against admission of hearsay, and appellant asked what the exception was. The following colloquy occurred:
THE COURT: If you're going under 803(4), statements for purposes of medical diagnosis or treatment, those would be statements of this gentleman, not of the doctor.
DEPUTY PROSECUTING ATTORNEY: Yes, and he's making those statements.
THE COURT: Well, he couldn't have told the doctor that his ribs were broke without knowing that. He can testify as to pains he felt. He can testify to injuries that he saw on his own body, but he cannot testify to internal injuries because the only person that could have diagnosed that or found those are gonna be the doctor.
DEPUTY PROSECUTING ATTORNEY: It's the State's position that the statement of the doctor is made to him for purposes of the treatment of him that would fall under the rule. That's the statement made for purpose of treatment.
THE COURT: Denied.
Following this colloquy, Hooker testified in part:
I will talk about the pain that I experienced. I experienced pain that night. I experienced pain in the oncoming weeks. The type of pain I experienced was first off, being hit in the face, bruising in my face. I had trouble, difficulty breathing. If you've ever had a cracked rib, broken rib, whatever, is having difficulty breathing,
difficulty sleeping when you lay down. That was on my left side.
Appellant made no objection. Then, during Hooker's cross-examination, the following colloquy happened:
DEFENSE COUNSEL: Now, let's talk about your injuries. What treatment did the doctor prescribe to you on that date that you went and saw him?
WITNESS: Basically he did an X-ray that came back. Obviously, I had to wait for the results. He came back in. He said, "Yes, you have cracked ribs." I didn't want to talk about that a minute ago.
At the conclusion on appellant's cross-examination, appellee stated, "Your Honor, at this time [appellee] will argue that defense has opened the door to this[,]" to which the circuit court responded, "Ask away." Appellee then asked appellant what he was diagnosed with and appellant objected, stating that he "[didn't] think [he] did open the door." The circuit court responded "[a]ctually, you asked him what the doctor said to him, and he said he went to an X-ray, and the doctor came back and said his rib was cracked. So, the door is open." Hooker then testified that he did not remember if the doctor said cracked or broken ribs but that the diagnosis was "one of those two things" and that he "[understood] there was damage done to a *253 bone in [his] body." Appellee then rested its case.
Despite objecting to any testimony from Hooker regarding the diagnosis he received from the incident between Hooker and appellant-and being sustained by the circuit court-appellant allowed Hooker to testify without objection to having cracked ribs during his direct examination by appellee and then asked Hooker to describe the treatment he received from the doctor, which necessarily included a statement of his diagnosis.[5] Furthermore, appellant referenced Hooker's cracked rib in his motion for a directed verdict.[6] This court cannot find error in the circuit court's ruling.
Appellant's second argument is that the circuit court erred in case number 60CR-15-396 in granting appellee's probation-revocation petition because of the circuit court's erroneous "opened the door" ruling in case number 60CR-16-3128. Being wholly reliant on a holding by this court that the circuit court erred in finding that appellant had "opened the door" to certain testimony in case number 60CR-16-3128-which we do not hold-this argument is moot. However, we note that the circuit court agreed with appellant's argument below that the charge in case number 60CR-16-3128 was not noticed as a listed basis for revocation; and therefore, it could not be used as a basis for revocation. Appellant's probation was revoked for not paying restitution and testing positive for illegal drugs; the new offense of battery in the second degree from case number 60CR-16-3128 was not a basis for revocation.
Lastly, we note that the sentencing order in case number 60CR-15-396 erroneously states that appellant entered a negotiated plea in his revocation proceedings; however, there was clearly a hearing on the same and he was found guilty. Accordingly, we remand to correct the sentencing order.
Affirmed; remanded to correct sentencing order.
Harrison and Klappenbach, JJ., agree.

The record does not state the disposition of the charges alleged in the petition.

The sentencing order in case number 60CR-16-3128 was amended twice to ultimately show that appellant was found guilty and sentenced by the court, thereby correcting errors in the two previous orders which stated that appellant pleaded guilty directly to the court and negotiated a plea of guilty, respectively.

Austin v. State , 2016 Ark. App. 194, at 5, 488 S.W.3d 555, 558 (citing Dickey v. State , 2016 Ark. 66, 483 S.W.3d 287 ).

Id.

Furthermore, this court notes that appellant failed to object to further questioning about his diagnosis at the first opportunity as he failed to object when appellee argued that appellant had "opened the door," which was effectively sustained by the circuit court. He did not object until appellee directly asked Hooker what he had been diagnosed with thereafter. The law, of course, is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity. Hardman v. State , 356 Ark. 7, at 11, 144 S.W.3d 744, 746 (2004) (citing Ferguson v. State , 343 Ark. 159, 33 S.W.3d 115 (2000) ; Pyle v. State , 340 Ark. 53, 8 S.W.3d 491 (2000) ); see Lockhart v. State , 2017 Ark. 13, 508 S.W.3d 869.

Appellant raises no argument regarding the denial of his motion for directed verdict.